## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| : | |
| LINDA J. BLOZIS, | : CIVIL ACTION NO. 05-891 (SLR) |
| Plaintiff, | : |
| vs. | : |
| MELLON TRUST OF DELAWARE, NATIONAL ASSOCIATION; MELLON BANK, NATIONAL ASSOCIATION; MELLON FINANCIAL CORPORATION, | : |
| | : |
| Defendants. | : |
| | : |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

REED SMITH LLP

Thad J. Bracegirdle (No. 3691)
1201 Market Street, Suite 1500
Wilmington, Delaware 19801
(302)778-7500

John Unkovic (admitted *pro hac vice*)
435 Sixth Avenue
Pittsburgh, PA 15219
(412) 288-3131

Stephanie Wilson (admitted *pro hac vice*)
Sherri A. Affrunti (admitted *pro hac vice*)
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, NJ 08540
(609) 987-0050

Attorneys for Defendants, Mellon Trust
of Delaware National Association,
Mellon Bank, National Association
And Mellon Financial Corporation

Dated:  March 1, 2007

## TABLE OF CONTENTS

Pg.

I. NATURE AND STAGE OF PROCEEDING.................................................1

II. SUMMARY OF THE ARGUMENT ......................................................2

III. FACTUAL BACKGROUND ............................................................ 2

    A. Mellon Trust of Delaware ....................................................... 2

    B. The Portfolio Administrator Position...........................................3

    C. Plaintiff's Hiring At Mellon Bank Delaware .................................. 4

    D. Plaintiff's Job Performance Under Becker.....................................6

    E. Plaintiff is Placed on Corrective Action.........................................8

    F. Plaintiff Reports to Landis and Continues to Have Performance
       Problems .......................................................................... 10

    G. Plaintiff's April 30, 2003 Meeting with Gilmore............................ 11

    H. The May 1, 2003 Internal Complaint And Mellon's Investigation ............ 13

    I. More Performance Problems Are Found While Plaintiff Was On
      Vacation .......................................................................... 14

    J. Plaintiff is Placed on Final Warning ......................................... 15

    K. Plaintiff's Employment Was Terminated ..................................... 15

IV. PLAINTIFF'S ALLEGATIONS...................................................... 16

    A. Plaintiff's Claims of Age Discrimination And Harassment Based on
       Age .............................................................................. 16

    B. Plaintiff's Claims of Sex Discrimination and Sex Harassment................ 18

    C. Plaintiff's Claims Of Retaliation ............................................. 20

V. LEGAL STANDARD ................................................................. 20

VI. LEGAL ARGUMENT ............................................................... 21

    A.    Count I and II of Plaintiff's Complaint Alleging Age and Sex
        Discrimination Must Be Dismissed ....................................... 23

    B.    Count II and Count III of Plaintiff's Complaint Alleging  Hostile
        Work  Environment Claims Based On Age and Sex Must Be
        Dismissed ................................................................... 35

WILLIB-52562.2

C.    Plaintiff's Age Retaliation Claim Must Also Be Dismissed.................38

VII. CONCLUSION ...................................................................................40

WILLIB-52562.2

## <u>TABLE OF AUTHORITIES</u>

Pg.

**Cases**

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986) .....................................................21

<u>Anderson v. McIntosh Inn d/b/a Courtyard Mariott</u>, 295 F. Supp. 2d 412
(D. Del. 2003) .............................................................................................................33

<u>Andrew v. Philadelphia</u>, 895 F.2d 1469 (3d Cir. 1990) ...................................................35

<u>Billet v. Cigna Corporation</u>, 940 F.2d 812 (3d Cir. 1991) ................................................27

<u>Bishop v. National R.R. Passenger Corp.</u>, 66 F. Supp.2d, 650 (E.D. Pa. 1991)............36

<u>Burlington Northern & Santa Fe Railway Co. v. White</u>, 126 S.Ct. 2405 (2006)........30, 31

<u>Calloway v. E.I. DuPont</u>, Civ. Act. No. 98-669-SLR, 2000 U.S. Dist. LEXIS 12642
(D. Del. Aug. 8, 2000).......................................................................................35, 36, 39

<u>Casey v. Zeneca Inc.</u>, Civ. Act. No. 93-514 (MMS), 1995 U.S. Dist. LEXIS 5656
(D. Del. Mar. 31, 1995) ...............................................................................................30

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) ...............................................................21

<u>Childress v. Dover Downs, Inc.</u>, Civ. Act. No. 98-206-SLR, 2000 U.S. Dist. LEXIS 4881
(D. Del. Mar. 31, 2000) .....................................................................................27, 34, 35

<u>Clifford v. Harleysville Group, Inc.</u>, No. 00-5432, 2001 WL 1530419, at *4
(E.D. Pa. Nov. 28, 2001).............................................................................................24

<u>Dungee v. Northeast Foods</u>, 940 F.Supp. 680 (D.N.J. 1996) ...................................28, 31

<u>Ezold v. Wolf, Block, Schorr & Solis-Cohen</u>, 983 F.2d 509 (3d Cir. 1982)...............28, 31

<u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998) ....................................................37

<u>Felty v. Graves – Humphreys Co.</u> 818 F.2d 1126 (4th Cir. 1987)...................................25

<u>Fuentes v. Perskie</u>, 32 F.3d 759 (3d Cir. 1994)...........................................22, 24, 25, 28

<u>Glanzman v. Metropolitan Management</u>, 290 F.Supp. 571 (E.D. Pa. 2003).................35

<u>Hankins v. Temple Univ.</u>, 829 F.2d 437 (3d Cir. 1987)...................................................21

<u>Harris v. Forklift Sys.</u>, 510 U.S. 17 (1993) .....................................................................37

<u>Healy v. New York Life Ins. Co.</u>, 860 F.2d 1209 (3d Cir. 1988), <u>cert</u>. <u>denied</u>,
490 U.S. 1098 (1989) ..................................................................................................21

<u>Hornsby v. Conoco, Inc.</u>, 777 F.2d 243, 246 (5th Cir. 1985)..........................................28

WILLIB-52562.2

Jalil v. Avdel Corp., 873 F.2d 701 (3d Cir. 1989), cert. denied, 493 U.S. 1023
(1990) ......................................................................................................25, 38

Jones v. UPS, Civ. No. 02-1449-SLR, 2004 U.S. Dist. LEXIS 14951
(D. Del. July 24, 2004)...................................................................24, 33, 34

Jones v. WDAS FM/AM Radio Stations, 74 F. Supp.2d 455 (E.D. Pa. 1999)...............23

Johnson v. Higgins, 43 F.3d 724 (3d Cir.), cert. denied, 515 U.S. 1159 (1995)............28

Keeshan v. Home Depot, Inc., 2001 WL 310601 (E.D. Pa. Mar. 27, 2001)...................23

Keller v. ORIX Credit Alliance, Inc., 130 F.3d 1101 (3d Cir. 1997) ...............................22

Kidd v. MBNA America Bank, 93 Fed. Appx. 399 (3d Cir. 2004) ............................22, 38

Krouse v. American Sterilizer Co., 126 F.3d 494 (3d Cir. 1997).....................................38

La Fleur v. Westridge Consultants, Inc., 844 F.Supp. 318 (E.D. Tex. 1994) ................28

Lamb-Bowman v. Del State Univ, 152 F. Supp. 2d 553 (D. Del. 2001) ...................34, 38

Marlow v. Office of Court Administration, State of New York, 820 F.Supp. 753
(S.D.N.Y. 1993), aff'd, 22 F.3d 1091 (2nd Cir.), cert. denied, 513 U.S. 897 (1994).29, 31

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) ......................21

Maull v. Division of State Police, 141 F. Supp. 2d 463 (D. Del. 2001) ...........................33

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)..............................................22

Miller v. Aluminum Co. of America, 679 F. Supp. 495, aff'd mem., 856 F.2d 184
(3d Cir. 1988) (W.D.Pa.)............................................................................21, 31

Oncale v. Sundowner Offshore Servs., 523 U.S. 75 (1988) ..........................................37

Payne v. Heckler, 604 F. Supp. 334 (E.D. Pa. 1985) ....................................................23

Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) ......................................................31

Reeves v. Sanderson Plumbing Prod., 530 U.S. 133 (2000)....................................23, 24

Riner v. National Cash Register, 434 A.2d 375 (Del. 1981)............................................22

Rooks v. Girl Scouts of Chicago, No. 95-3516, 1996 WL 459941
(7th Cir. Aug. 9, 1996) ...............................................................................29, 31

Sempier v. Johnson & Higgins, 45 F.3d 724 (3d Cir.), cert. denied,
515 U.S. 1159 (1995) ................................................................................27, 28

Showwalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231 (3d Cir. 1999)....................23

Shramban v. Aetna, 115 Fed. Appx. 578 (3d Cir. 2000)................................................37

WILLIB-52562.2

Silver v. American Institute of Certified Public Accountants, No. 05-4252,
2006 U.S. App. LEXIS 30035 (3d Cir. Dec. 6, 2006) ....................................24

Spangle v. Valley Forge Sewer Auth., 839 F.2d 171 (3d Cir. 1988) ..............................21

Taylor v. Potter, Civ. Act. No. 03-1105 KAJ, 2004 U.S. Dist. LEXIS 16629
(D. Del. Aug. 2, 2004) aff'd 2005 U.S. App. LEXIS 17859 (3d Cir. Aug. 18, 2005)........28

Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981)......................................22

Thrower v. The Home Depot, Civ. Act. No. 04-577, 2005 U.S. Dist. LEXIS 21389
(W.D. Pa. Sept. 27, 2005)...........................................................................30

Wallis v. J.R. Simplot Co., 26 F.3d 885 (9th Cir. 1994) ..................................................25

Weston v. Pennsylvania, 251 F.3d 420 (3d Cir. 2001) ..................................................37

Wien v. Sun Company, Inc., No. Civ.A. 95-7646, 1997 WL 772810
(E.D. Pa. Nov. 21, 1997)..............................................................................31

Williams v. Borough of West Chester, 891 F.2d 458 (3d Cir. 1989) ........................25, 26

Woodson v. Scott Paper Co., 109 F.3d 913 (3d Cir. 1997), cert. denied,
522 U.S. 914 (1997) .................................................................................38

**Statutes**

19 Del. C. § 711(a)(1) and (f)...........................................................................1

29 U.S.C. § 621 et. seq. ..................................................................................1

42 U.S.C. § 2000 et. seq. ................................................................................1

**Rules**

Fed.R.Civ.P. 56(e) .........................................................................................20

WILLIB-52562.2

Defendants, Mellon Trust of Delaware, National Association, Mellon Bank, National Association and Mellon Financial Corporation (collectively, for purposes of this brief, are referred to as "Mellon" or "Defendants") by and through their counsel, respectfully submit this memorandum in support of their Motion for Summary Judgment on all claims pled in the Complaint of Linda J. Blozis ("Plaintiff" or "Blozis").

## I. NATURE AND STAGE OF PROCEEDING

On December 27, 2005, Plaintiff filed a Complaint against Defendants alleging claims of age and sex discrimination, harassment based on age and sex, and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et. seq. ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 et. seq. ("ADEA") and Delaware law, 19 Del. C. § 711(a)(1) and (f).  (Docket Item ("D.I.") 1).[1]  Defendants timely filed an Answer and Affirmative Defenses to Plaintiff's Complaint on February 24, 2006, denying Plaintiff's claims in their entirety.  (D.I. 5).[2]

The parties engaged in extensive discovery which concluded on December 29, 2006.[3] Based on the undisputed facts contained in the record and the applicable law, Defendants now move the Court for summary judgment on all of Plaintiff's claims.

---

[1]   Plaintiff's Complaint ("Complaint") is included in the Appendix of Exhibits to Memorandum in Support of Defendants' Motion for Summary Judgment referenced herein as the "Appendix" and the Complaint as "Exhibit ('Exh.') A" ( A-1 – A-18).

[2]   Defendants' Answer and Affirmative Defenses to Plaintiff's Complaint is included in the Appendix as "Exh. B" (A-19 - A -36).

[3]   Fact discovery was extended by mutual consent by the parties.  William Becker was deposed on January 5, 2007 and Plaintiff's deposition was concluded on January 13, 2007.

- 1 -

## II. SUMMARY OF THE ARGUMENT

1.      Plaintiff's age and sex discrimination claims are deficient as a matter of law,

insofar, as the record is entirely devoid of any evidence that similarly situated employees

younger than forty and/or male employees were treated more favorably than Plaintiff, and there

exists no proof that the decision to terminate Plaintiff's employment in July 2003 was motivated

by discriminatory animus, such that Plaintiff cannot establish a prima facie case.  Moreover,

even if Plaintiff could establish a prima facie case, Plaintiff cannot prove, based upon the record

evidence, that Defendants' legitimate, non-discriminatory reason for terminating Plaintiff's

employment for performance deficiencies was pretexual.

2.      Plaintiff's hostile work environment claims based on age and sex are deficient as

a matter of law, insofar, as the record is entirely devoid of any evidence that age or sex was a

substantial factor in the alleged discrimination.  Moreover, the record confirms that the alleged

conduct was not sufficiently "pervasive or regular" to constitute a hostile work environment.  As

another independent reason, Plaintiff cannot establish the existence of respondeat superior

liability because Defendants promptly and thoroughly investigated all of the claims of which they

were aware and it was determined reasonably that no harassment occurred.

3.      Plaintiff's retaliatory discipline and discharge claims based on her May 1, 2003

internal age complaint are deficient as a matter of law as the decision to place Plaintiff on a

Final Written Warning occurred prior to her internal complaint and, as an independent reason,

she cannot establish that Defendants' reasons for placing her on Final Written Warning or the

eventual termination of her employment for performance were pretexts.

## III. FACTUAL BACKGROUND

### A. Mellon Trust of Delaware

Mellon provides a broad range of financial products and services for corporations and

institutions such as investment management, trust and custody, foreign exchange, securities

WILLIB-52562.2

lending, performance analytics, fund administration, stock transfer, proxy solicitation, treasury management and banking services to affluent individuals and trust and custody. One of the Mellon subsidiaries in the Private Wealth Management business is Mellon Trust of Delaware, National Association. This is where Plaintiff was employed, with her last position being Portfolio Administrator. (Thomas Decl., Exh. C at ¶¶ 2, 5).[4]

### B. The Portfolio Administrator Position

Generally, the Portfolio Administrator is responsible for supporting the Senior Portfolio Officers who are responsible for the management of assigned client relationships. The client relationships include personal trusts, agency, estates, charitable, pensions, and institutional accounts. The Portfolio Administrator assists the Senior Portfolio Officer in articulating investment objectives and review accounts to ensure that they are meeting those objectives. They also help to ensure that the account is administered in accordance with the governing instrument and accepted fiduciary principles. In the late 1990s and early 2000's, Mellon increased the Portfolio Administrator's role. They were expected to be more proficient in performing their jobs and more skilled. It was contemplated that the Portfolio Administrator would be able to handle aspects of client accounts on their own, which could entail learning Mellon's processes. ((Thomas Decl., Exh. C at ¶¶ 6-7; Becker Decl., Exh. D at ¶ 3; Gilmore Dep. Tr., Exh. E at 15:20-16:6).[5]

---

[4]    The "Thomas Decl." references Rosemary Thomas' February 26, 2007 Declaration, together with accompanying Exhibits 1-13, collectively included in the Appendix as "Exh. C" (A-37 – A-106).

[5]    The "Becker Decl." references William S. Becker's February 21, 2007 Declaration, together with accompanying Exhibits 1-13, collectively included in the Appendix as "Exh. D" (A- 107 – A-146).

The relevant pages from the Deposition Transcript of Brendan Gilmore, dated December 19, 2006 are collectively included in the Appendix as "Exh. E" (A - 147 – A-164).
Continued on following page

WILLIB-52562.2

## C. Plaintiff's Hiring At Mellon Bank Delaware

Plaintiff, whose date of birth is December 10, 1945, was hired to work at Mellon Trust of Delaware on February 12, 1990 as an administrative secretary. Plaintiff held several positions in the Mellon Private Asset Management group, located in Delaware with her last position being Portfolio Administrator. She started in this position on October 1, 1999 and remained in this position until her employment was terminated on July 19, 2003. During her tenure of employment with Mellon, Plaintiff was assigned only to work in the Delaware office ("The Delaware office") and never worked in the Philadelphia or Washington, D.C. offices. (Thomas Decl., Exh. C at ¶ 5).

During Plaintiff's tenure as a Portfolio Administrator, she worked on a team that was lead by Brendan Gilmore ("Gilmore") which was commonly referred to as the "Gilmore Team." The Gilmore Team consisted of individuals who worked as Portfolio Officers and Portfolio Administrators. A small number of these individuals worked out of the Delaware office, a larger group of individuals were assigned to an office in Philadelphia and one individual, Bruce Holmquist ("Holmquist"), a Portfolio Officer, worked out of Washington, D.C. During the entire period of time that Plaintiff worked at Mellon, there were no male Portfolio Administrators working or assigned to the Delaware office. (Gilmore Dep. Tr., Exh. E at 8:10-11:8; 73:22-74:1).

The Delaware office was originally located at 10th & Market in Wilmington, Delaware before it moved to Greenville, Delaware in the 2001-2002 timeframe. In 1998, the Delaware office consisted of Robert Bell ("Bell"), Assistant Portfolio Officer, Linda Squier ("Squier"), Portfolio Officer, Martha Fetters ("Fetters"), Portfolio Officer, Kathleen Agne ("Agne"), Portfolio

———————————————

Continued from previous page

Throughout this Brief, citations to the page and line will be stated, e.g., as "Gilmore Dep. Tr., Exh. E at __:___".

WILLIB-52562.2

Administrator, and William Becker, Portfolio Officer.  Additionally, there were other members of

the Gilmore Team located in the Philadelphia office: Hilda Ennis, Investment Specialist I,

Deanna Coffin, Executive Secretary, Marian Marano ("Marano"), Portfolio Administrator, and

Bridget Vargo ("Vargo"), Portfolio Officer.  Holmquist, Portfolio Officer, worked out of

Washington, D.C.  (Blozis Dep. Tr., Exh. F at 12:14-13:10; 16:15-17:14, Thomas Decl., Exh. C

at ¶ 3).[6]  Cindy Chambliss ("Chambliss"), Portfolio Administrator, also reported to Gilmore in

1998.  (Thomas Decl., Exh. C at ¶ 3).

Over time, the compositions of the Delaware and Philadelphia offices changed.  As an

example, Plaintiff joined the Team in 1999.  Vargo, whose date of birth is November 4, 1969, left

in 2001.  During the 2002 timeframe, Plaintiff, Becker, Gregg Landis ("Landis") and Maria

Dunlop ("Dunlop"), Portfolio Administrator, were in the Delaware office.  During the period of

time that Plaintiff was employed in 2003, the Delaware office consisted of Plaintiff, Landis and

Dunlop.  (Blozis Dep. Tr., Exh. F at 21:11-23:9; 24:9-25:6; Thomas Decl., Exh. C at ¶ 4).  Blozis

never directly reported to Gilmore.  During periods of her employment, she reported to Squier,

Fetters, Becker, and Landis.  (Blozis Dep. Tr., Exh. F at 17:15-18:12).

Plaintiff reported to Becker from September 1998 through December 2002.  After

December 2002, Becker transferred from the Delaware office to Philadelphia where he was

made a team leader for a group that was different from the Gilmore Team.  (Blozis Dep. Tr.,

Exh. F at 20:9-21:9; Becker Dep. Tr., Exh. G at 5:19-24; 10:2-6; 54:23-55:13;).[7]  During the

---

6    The relevant pages from the Deposition Transcripts of Linda J. Blozis, dated July 26, 2006 and January 13, 2007 are collectively included in the Appendix as "Exh. F" (A- 165 – A-263).  Throughout this Brief, citations to the page and line will be stated, e.g., as "Blozis Dep., Tr., Exh. F. at ___:_____."

7    The relevant pages of the Deposition Transcript of William S. Becker, dated January 5, 2007 are collectively included in the Appendix as "Exh. G" (A-264 – A-276).  Throughout this Brief, citations to the page and line will be stated, e.g., as "Becker Dep. Tr., Exh. G at __:___."

Continued on following page

WILLIB-52562.2

period of time that Becker was assigned to the Delaware office, he supervised only Agne and

Plaintiff.  (Becker Dep. Tr., Exh. G at 10:2-6).  After Becker transferred to the Philadelphia office,

Plaintiff began reporting directly to Landis until her employment was terminated in July 2003.

(Blozis Dep., Tr., Exh. F. at 20:9-21:9).  Landis supervised only Plaintiff, Dunlop, and later Laura

Shannon, a Portfolio Administrator, who was hired to work in the Delaware office after Plaintiff

was no longer employed.  (Landis Decl., Exh. H at ¶¶ 2, 28-29).  Dunlop and Shannon did not

have the performance issues that Plaintiff had and, unlike Plaintiff, were never placed on

corrective action.  (Id. at ¶¶ 28-29).

### D. Plaintiff's Job Performance Under Becker

During the period of time that Plaintiff reported to Becker, Becker expressed

dissatisfaction with Plaintiff's performance and continuously noted errors in the assignments she

completed for him.  After revising Plaintiff's work, Becker would counsel Plaintiff on how to

improve.  In Plaintiff's 2001 performance evaluation that was completed on Mellon's

Performance Management Form and signed on February 20, 2002 by Plaintiff and on February

22, 2002 by Becker, Becker states in the category concerning Plaintiff's Competency

Development Plan that Plaintiff had to have "stronger product knowledge," "increase

proficiencies in preparing client materials" and "help ensure client satisfaction".  Plaintiff's two

areas of developments were improving product knowledge and submitting assignments on time,

---

Continued from previous page

The "Landis Decl." references Gregg L. Landis' February 26, 2007 Declaration, together
with accompanying Exhibits 1-22, collectively included in the Appendix as "Exh. H" (A-
277 – A-318).

- 6 -

which Becker discussed with her.  (Becker Decl., Exh. D at ¶¶ 2-5; Exhs. 1-5, 7 to Becker Decl. at (A-113 – A-131, A-135); Exh. I at A-325 and A-328; Blozis Dep. Tr., Exh. F at 67:10-68:4).[8]

Consistent with the areas that were highlighted in Plaintiff's 2001 performance evaluation, Becker continued to note inaccuracies in Plaintiff's completion of forms used to provide clients with information on their portfolios, such as Asset Risk Profile Questionnaires, Single Equity Sell Forms, Automated Investment Review System forms.  (Becker Decl., Exh. D at ¶¶ 9,10,12 and Exhs. 5-6,8 attached thereto).  These recurring mistakes showed, among other things, a lack of attention to detail, failure to understand her job, and failure to understand Mellon's products.  (Becker Decl., Exh. D at ¶ 6)

In addition to the mistakes on the Forms that Becker had to correct, Plaintiff would fail to anticipate information that Becker would need in servicing a client's account (Becker, Decl., Exh. D at ¶ 11 and Exh. 7 attached thereto), failed to follow-up on assignments, (Becker Decl., Exh. D at ¶¶ 13 and 14) and would fail to complete assignments that she was given on a timely basis.  For example, Becker gave Plaintiff an instruction to complete an assignment in mid October of 2002 and on November 19, 2002, the assignment still was not completed.  (Becker Decl., Exh. D. at ¶ 14 and Exh. 10 attached thereto).  Further evidencing Plaintiff's pattern of late submission of work, on April 10, 2002, Becker asked for information on a particular client file and six months later on October 8, 2002 the information still had not been completed.  In reaction to the six month delay Becker states, "Its not okay to stop working on something and forget about it.  What makes this worse is that [the client] has come back to us again requesting the same info." (Becker Decl., Exh. D at ¶ 13 and Exh. 9 at A-140 attached thereto).  For her part, Blozis acknowledges the lateness and states, "I apologize for my own delay in completing

---

8        Plaintiff's 2001 performance evaluation that was completed on Mellon's Performance
         Management Exempt Form is included in the Appendix as Exh. I.  (A-320 – A-328).

WILLIB-52562.2

it in a more timely manner." (Becker, Decl., Exh. D at ¶ 13 and Exh. 9 at A-140 attached

thereto; Blozis Dep. Tr., Exh. F at 53:7-54:7; 158:18-159:4).

Against the backdrop of Plaintiff's persistent performance problems, on December 4,

2002, Becker e-mailed Rosemary Thomas, Mellon's Senior Human Resources Business

Partner, requesting assistance.  In the e-mail, Becker states, among other things the following:

> I have to begin a file for Linda Blozis.  She has consistently been missing
> deadlines on projects over the past year.  In addition to that, the quality of
> her work has been poor, inaccuracy of placing trades to incomplete Reg.
> 9 reviews, and the list goes on.  I personally believe that she simply
> cannot keep up with what I need her to do, nor does she have the
> capacity to take on new responsibilities that her job now needs to include,
> like taking on accounts of her own and learning our investment
> processes, etc.

(Becker Decl., Exh. D at ¶ 17 and Exh. 13 attached thereto).  Additionally, Becker states, "I've

been doing too much of her job over the past four years and I simply refuse to do it anymore."

(Exh. 13 to Becker Decl, Exh. D at A-146).

For her part, Plaintiff concedes that Becker was feeling the pressure to work harder and

that Gilmore wanted more investment involvement from the Portfolio Assistants than had been

required previously.  She acknowledges also that during the period that Becker supervised her,

he advised Plaintiff that more work was expected of her.  (Blozis Dep. Tr., Exh. F at 71:5-15;

72:3-24; Gilmore Dep. Tr., Exh. E at 15:16-16:3).

### E. Plaintiff is Placed on Corrective Action

As part of its on-going efforts to assist employees with performance issues, Mellon has

implemented a corrective action policy entitled Managing Performance Through Corrective Act,

that is located in its Employee Handbook as well as in other Mellon publications.  In particular,

the Handbook is available on Mellon's intranet and Blozis had access to it.  Mellon's corrective

action process is described in its Steps in Corrective Action Process and includes generally an

- 8 -

Initial Written Warning, a Final Written Warning and Termination.  (Thomas Decl., Exh. C at ¶ 9
and Exh. 1 attached thereto at A-52 – A-53; Thomas Dep. Tr., Exh. J. at 79:21-80:4).[9]

When Plaintiff's work performance failed to improve, she was placed on corrective action
in accordance with Mellon's policy.  After discussion with Thomas, Becker and Gilmore, it was
decided that Plaintiff, consistent with Mellon's policy, would receive her Initial Written Warning in
her 2002 performance evaluation, in which she received an overall rating of Action Needed.
This triggered Mellon's Corrective Action Process.[10]  (Exh. K at A-346; Thomas Decl., Exh. C at
¶ 9; Thomas Dep. Tr., Exh. J at 79:21-80:1; Becker Dep. Tr., Exh. G at 66:2-7; 68:2-24).  Within
the 2002 evaluation, Plaintiff received a Needs Improvement on the Competencies section,
where Becker notes that Plaintiff "missed deadlines and that there was little progress made in
the area of product knowledge/work quality."  (Exh. K at A-345 – A-346; Becker Dep. Tr., Exh. G
at 65:10-66:1).  The 2002 review further notes that "Linda understands that the role of Portfolio
Administrator is changing at Mellon and that more will be expected of her in the future."  (Exh. K
at A-345; Becker Dep. Tr., Exh. G at 63:8-24).  The 2002 review stressed the importance of the
timely completion of projects and taking ownership of the projects without constant monitoring.
(Exh. K at A-345).  It emphasized that Plaintiff needed to develop a better understanding of
Mellon's product and that there would be zero tolerance for further untimely submission of
projects.  (Exh. K at A-346).  Significantly, the review states that if any additional deadlines were
missed, further corrective action would follow.  (Exh. K. at A-346).  Plaintiff concedes this point.

---

9    The relevant pages of the Deposition Transcript of Rosemary C. Thomas, dated
     December 19, 2006 are collectively included in the Appendix as "Exh. J" (A-329 – A-
     341).  Throughout this Brief, citations to the page and line will be stated, e.g., as
     "Thomas Dep. Tr., Exh. J at ___:___."

10   Plaintiff's 2002 performance evaluation that was completed on Mellon's Performance
     Exempt Form is included in the Appendix as Exh. K (A-342 – A-350).

WILLIB-52562.2

(Blozis Dep. Tr., Exh. F at 230:16-22). However, Plaintiff disagreed with her review and wrote a rebuttal. (Becker Dep. Tr., Exh. G at 66:8-12; Exh. K at A-349 – A-350).

### F. Plaintiff Reports to Landis and Continues to Have Performance Problems

After Becker transitioned to Philadelphia, Blozis began reporting directly to Landis. Plaintiff's performance problems continued which included untimely submission of projects, inattention to detail, and failure to understand Mellon's products. (Landis Decl., Exh. H at ¶¶ 2-21). As, non exclusive, examples, Landis observed:

- On January 30, 2003, Blozis incorrectly completed an Investment Review for a client. (Landis Decl., Exh. H at ¶ 5 and Exh. 1 attached to Exh. H).

- Blozis was inattentive to detail and had printed an Agenda for a meeting with a client with improper numerical categories. (Landis Decl., Exh. H at ¶ 6 and Exh. 2 attached to Exh. H).

- On April 29, 2003, Blozis had three problems in connection with an Investment Review that she had performed for a client that showed a lack of understanding of the work she was doing and also failure to anticipate that the client would question a number of withdrawals on his account. (Landis Decl., Exh. H at ¶ 13 and Exh. 9 attached to Exh. H).

- He had given Blozis a project on March 12 concerning a stale price report which she had not finished as of April 21, 2003. (Landis Decl., Exh. H at ¶ 11 and Exh. 7 attached to Exh. H).

- Blozis continued to make mistakes on the Investment Reviews. (Landis Decl., Exh. H at ¶¶ 12, 19-21 and Exhs. 8, 14-16 attached to Exh. H).

- Blozis continued to make mistakes in completing the Asset Allocation Risk Profile Questionnaires for clients. (Landis Decl., Exh. H at ¶ 10 and Exh. 6 attached to Exh. H).

- 10 -

- Plaintiff failed to correct information to proxy materials sent to clients.  (Landis Decl., Exh. H at ¶ 9 and Exh. 5 attached to Exh. H).

- Blozis showed a lack of understanding of Mellon's stocks.  (Landis Decl., Exh. H at ¶ 1-14 and Exh. 10 attached to Exh. H).

- Blozis lacked attention to detail in completing client information.  (Landis Decl., Exh. H at ¶¶5-6, 8 and Exhs. 1-2 and 4 attached to Exh. H).

- Landis had asked Blozis to complete a project by February 5, 2003, and the project was still not completed on February 27, 2003.  (Landis Decl., Exh. H at ¶7 and Exh. E attached to Exh. H).

- Blozis failed to complete client booklets before leaving for vacation in early May 2003, after acknowledging in an April 24 e-mail that she would prepare the booklets.  (Landis, Decl., Exh. H at ¶¶15-16 and Exh. 11 attached thereto)

Plaintiff's failure to timely complete the client booklets was the subject of a meeting between her and Gilmore on April 30, 2003.  (Landis Decl., Exh. H at ¶ 15; Blozis Dep. Tr., Exh. F at 79:13-83:18)

### G. Plaintiff's April 30, 2003 Meeting with Gilmore

On April 30, 2003, Plaintiff met with Gilmore, at which time he criticized her job performance and specifically complained that Plaintiff had not completed certain client booklets. Plaintiff alleged that during the meeting Gilmore spoke to her in a "threatening and demeaning" tone and used the words "shit and god damnit."  However, Plaintiff testified that she had heard Gilmore use the same words in meetings in which all team members, male and female, were present and he used the same words in meetings with Becker.  (Blozis Dep. Tr., Exh. F at 87:7-89:12;  90:11-91:4;  99:13-100:2).  For her part, Blozis acknowledged that she has used the same words outside of the office.  (Blozis Dep. Tr., Exh. F at 95:22-96:10).

- 11 -

Plaintiff testified that she did not even know if Gilmore used profanity because of her age or gender and stated that he may have used it for "shock value" or "scare tactics." (Blozis Dep. Tr., Exh. F at 151:6-152:3). She stated that during the April 30 meeting, Gilmore called her a "survivor." Although Gilmore never said anything about Plaintiff's age or used the term "younger" or "old", Plaintiff felt that he was referring to her age by using this term because she was the oldest remaining person on the Gilmore Team. (Blozis Dep. Tr., Exh. F at 111:16-113:20; 126:12-15; 145:13-18). However, Plaintiff concedes that she, along with Gilmore, were the last of his original team, (Blozis Dep. Tr., Exh. F at 119:8-120:4), as were Holmquist, Chambliss and Marano. (Thomas Decl., Exh. C at ¶¶ 3, 15). Gilmore's date of birth is November 20, 1946 and, therefore, approximately one year younger than Blozis. (Thomas Decl., Exh. C at ¶ 20). Although Plaintiff testified that this was an ageist comment, there were other remaining and other members of the Gilmore Team who are younger than Plaintiff: Holmquist, whose date of birth is September 6, 1952; Chambliss, whose date of birth is October 9, 1967; and Marano, whose date of birth is January 28, 1953. (Thomas Decl., Exh. C at ¶¶ 3, 15).

Plaintiff alleged that, during the April 30 meeting, Gilmore said that others in the group were doing more work and she perceived this to mean that he was referring to younger members of the group. However, she candidly admits that Gilmore never referred specifically to "youth or age." (Blozis Dep. Tr., Exh. F at 101:14-103:6).

After Gilmore's meeting with Plaintiff, he contacted Thomas to discuss his concerns that Blozis' performance was not improving because as an example, she had already missed a project deadline in direct contravention of the terms of her February 2003 Initial Written Warning. (Thomas Decl., Exh. C at ¶ 10). The Warning had specifically directed that there would be a "zero tolerance standard for lack of timely submission." (Exh. K at A-346). Thomas, Landis, and Gilmore discussed Plaintiff's overall performance since February 2003. Because

- 12 -

there had been no immediate and sustained improvement, it was determined on April 30 that Plaintiff would be placed on a Final Written Warning. (Thomas Decl., Exh. C at ¶ 10).

### H. The May 1, 2003 Internal Complaint And Mellon's Investigation

Mellon has a published Equal Employment Opportunity policy in its Handbook that prohibits discrimination on the basis of age, gender and other protected categories. The Handbook also contains a section prohibiting Sexual And Other Discriminatory Harassment coupled with a complaint procedure. Mellon's Corporate Policy and Procedures Manual contains policies that, among other things, prohibit retaliation against employees who file a complaint of discrimination. (Thomas Decl., Exh. C at ¶ 11 and Exh. 3 attached thereto at A-71 – A-72; A-75). Plaintiff availed herself of Mellon's policies on May 1, 2003 when she complained to Thomas about Gilmore. She complained that Gilmore's statements were made to her because of age because he had called her a survivor, had used profanity, had raised his voice, and had stated that younger workers did more work than Plaintiff. However, Plaintiff acknowledged that Gilmore never specifically referred to "youth" or "age". (Blozis Dep. Tr., Exh. F at 109:5-113:20). Thomas advised Plaintiff that she would speak to Gilmore, which she did. (Blozis Dep. Tr., Exh. F at 117:24-118:3; Thomas Dep. Tr., Exh. J at 76:18-77:11).

As part of her investigation, Thomas took notes of her meeting with Plaintiff. (Thomas Decl., Exh. C at ¶ 12 and Exhibit 4 attached thereto; Thomas Dep. Tr., Exh. J at 72:14-76:4). After meeting with Plaintiff, Thomas called Tom Galante ("Galante") in Employee Relations and discussed Plaintiff's complaint. As part of Thomas' additional investigative steps, Thomas called Dunlop and inquired if she had heard anything. Dunlop stated that she had heard elevated voices, but had not heard the substance of the conversation. (Thomas Decl., Exh. C at ¶¶ 13-14; Thomas Dep., Tr., J at 76:11-77:11).

Thomas also interviewed Gilmore, Landis, Becker and Marano. Although Marano was in the Philadelphia office, Thomas felt it was appropriate to speak with Marano because she was

closest to Plaintiff in age. Marano's date of birth is January 28, 1953. Marano did not feel that

Gilmore harbored any age animus. Gilmore denied making any age discriminatory comments.

(Thomas Decl., Exh. C at ¶¶ 13, 15; Thomas Dep. Tr., Exh. J at 76:18-78:11). After completion

of the interviews, Thomas conferred with Galante and it was determined that Gilmore did not

engage in age discriminatory conduct. Thomas then informed Plaintiff of the results of the

investigation. (Thomas Decl., Exh. C at ¶ 15).

### I. More Performance Problems Are Found
### While Plaintiff Was On Vacation

Blozis' performance issues continued and more problems were discovered after Blozis

went on vacation during the first week of May 2003. (Landis Decl., Exh. H at ¶¶ 16-17 and

Exhs. 12-13 attached to Exh. H). During that time, Landis discovered other projects that had

not been done incorrectly. For example, he discovered that Blozis had sent an incomplete

recommendation to a client which made Mellon look very unsophisticated to an important client.

(Landis Decl., Exh. H at ¶ 17 and Exh. 13 attached to Exh. H). Additionally, Plaintiff had been

asked by Becker to review a client file, then write a PORCH report and forward the information

to Holmquist. However, Blozis did not do this. After discovering that Plaintiff had failed to

complete the assignment, this information Landis stated that "[he] found it inexcusable that this

job did not get done in the past month." (Id. at A-306 – A-307). In response, Gilmore's

supervisor, Paul Kochis, stated that he considered Plaintiff's conduct to be "gross negligence or

insubordination" and recommended that she be terminated upon her return from vacation.

(Landis Decl., Exh. H at ¶ 18 and Exh. 13 attached to Exh. H at A-306). However, after further

discussion with Kochis, Gilmore, Thomas and Landis, it was determined that Plaintiff would be

put on a Final Written Warning, as it had been decided on April 30, instead of immediate

termination. (Landis Decl., Exh. H at ¶ 15, 22; Thomas Decl., Exh. C at ¶ 16). Before the Final

WILLIB-52562.2

Written Warning was given to Plaintiff, Landis discovered even more examples of performance

deficiencies. (Landis Decl., Exh. H at ¶¶ 19-21 and Exhs. 14-16 attached to Exh. H)

### J. Plaintiff is Placed on Final Warning

After Plaintiff returned from vacation, Landis met with Blozis and gave her the Final

Written Warning,[11] which Blozis signed on May 19, 2003.  (Landis Decl., Exh. H at ¶¶ 23, 24).

The Final Written Warning, notes that Plaintiff's "lack of detail and timeliness continues to need

improvement" and identifies the following performance areas: failure to determine the

importance of finishing projects in a timely manner; lack of ownership of projects without

constant monitoring; product knowledge; and work quality.  (Exh. L).  The Final Written Warning

states that Plaintiff had to demonstrate immediate and sustained improvement in her

performance and that failure to meet expectations would result in further "corrective action up to

and including termination of employment."  (Id.)  During the meeting, Landis told Plaintiff that the

job was fast-paced and that she would have to do more with less.  (Landis Decl., Exh. H at ¶

24).

### K. Plaintiff's Employment Was Terminated

Plaintiff's Final Written Warning required "immediate and sustained improvement in [her

overall] performance . . ." (Exh. L).  However, Plaintiff's performance issues continued.  As an

example, Plaintiff was directed to complete the stale pricing list by June 20th as stated in her

May 21, 2003 to do list.  (Landis Decl., Exh. H at ¶ 25 and Exh. 20 attached thereto at A-313).

However, by June 26, 2003, the May 2003 stale pricing report had not been completed.  For her

part, Plaintiff concedes, "In short, the task is not completed."  (Landis Decl., Exh. H at ¶ 25  and

Exh. 20 attached thereto at A-314).  In addition to her failure to complete the pricing report on a

---

11    Plaintiff's May 19, 2003 Final Written Warning is included in the Appendix as "Exh. L" (A-
       351).

- 15 -

timely basis, Blozis continued to lack sufficient product knowledge. (Landis Decl., Exh. H at ¶ 26 and Exh. 21 attached thereto). In the wake of the continuing performance problems, Landis conferred with Thomas and Gilmore concerning appropriate steps. (Landis Decl., Exh. H at ¶ 26 and Exh. 21 attached thereto). As part of the decision making process, Thomas conferred also with Galante. The consensus was that Plaintiff's employment should be terminated. (Thomas Decl., Exh. C at ¶ 17 and Exh. 5 attached thereto). Consequently, Plaintiff was terminated on July 19, 2003 for performance reasons. (Gilmore Dep. Tr., Exh. E at 64:13-65:9).

## IV. PLAINTIFF'S ALLEGATIONS

### A. Plaintiff's Claims of Age Discrimination and Harassment Based On Age

Plaintiff alleges that her employment was terminated because of age and that she suffered a hostile work environment based on age. In support of her claims, she alleges that Gilmore had a plan to eliminate all older workers and replace them with younger workers; Gilmore called her a survivor on a single occasion on April 30, 2003; used profanity in the April 30, 2003 meeting; praised Dunlop and not Plaintiff, although Plaintiff concedes that Dunlop was worthy of the praise; (Blozis Dep. Tr., Exh. F at 127:15-128:4) and was more jovial with the younger workers on his Team than the older workers. (Blozis Dep. Tr., Exh. F at 126:16-132:19). Although she testified that she could not recall ever hearing Becker or Landis make any age-related remarks, (Blozis Dep. Tr., Exh. F at 209:4-17; 211:22-212:4) she, nevertheless, alleges that Becker and Landis engaged in age discrimination because they were Gilmore's "pawns" who carried out Gilmore's instructions. (Blozis Dep. Tr., Exh. F at 208:9-209; 211:5-17).

In support of her allegations that a clandestine scheme existed to eliminate older workers on the Gilmore Team and replace them with younger people, Blozis serves up Agne, Bell, Fetters, Squier and Frances Smith ("Smith") as the older workers who were "forced" out.

WILLIB-52562.2

(Blozis Dep. Tr., Exh. F at 120:5-121:3). However, Plaintiff's argument collapses quickly. As an initial matter, she acknowledges that Smith was never even on Gilmore's Team. (Blozis Dep. Tr., Exh. F at 121:3-8). The rest of her theory based on Agne, Bell, Fetters, and Squier fares no betters as her so-called evidence is based or supposition, hearsay and speculation. As an example, although Plaintiff testified that she "surmised" that Agne was having performance problems, (Blozis Dep. Tr., Exh. F at 114:18-21) she did not agree with Gilmore or Becker's assessment of Agne's work and believed, instead, that Agne was terminated because of her age. (Blozis Dep. Tr., Exh. F at 113:21-115:5). This belief is quickly belied by Plaintiff's own acknowledgement that she never performed any evaluation of Agne's work and Agne never said specifically that her termination was because of her age. (Blozis Dep., Tr., Exh. F at 115:10-116:6).

Plaintiff testified that Bell was forced to resign by Gilmore because Gilmore was inappropriately putting too much pressure on Bell to perform. (Blozis Dep. Tr., Exh. F at 30:19-21). Plaintiff oddly persists in this belief despite her testimony that Bell never told her that Gilmore forced him to resign, she does not know what assignments Gilmore gave Bell, she did not have any conversations with Bell about his assignments and Bell never said that he was given more work because of his age. (Blozis Dep., Tr., Exh. F at 30:19-31:24; 39:9-40:19; 43:16-18) In support of her self-styled theory that Bell was "forced" out by being given more work, Plaintiff testified that she saw that Bell had more work on his desk than others on the occasions that she came to the Philadelphia office and that Fetters and Squier told her that Gilmore forced out Bell. (Blozis Dep. Tr., Exh. F at 40:14-43:15).

As to Squier, Plaintiff testified that she witnessed Gilmore making "unprofessional, critical criticisms" of how Squier conducted her work, which were "not always" accurate. (Blozis Dep. Tr., Exh. F at 44:1-14; 50:3-7). Plaintiff holds this opinion despite failing to recall when she witnessed such criticisms and Squier never saying that she thought her alleged treatment was

- 17 -

because of age. (Blozis Dep. Tr., Exh. F at 44:7-16; 50:23-51:4). When pressed to supply

dates that she witnessed Gilmore's so-called unprofessional conduct, Plaintiff could not recall

specific dates, but testified that Squier left Mellon's employment in the late 1990s, so it would

have had to occurred in that timeframe, approximately 14 years before Plaintiff filed her

discrimination Charge with the EEOC on May 7, 2004. (Blozis Dep. Tr., Exh. F at 44:7-45:2;

Thomas Decl., Exh. C at ¶ 18 and Exh. 6 attached thereto).

Although pointing to "older workers" who were "forced out" of the Gilmore Team, Plaintiff

acknowledges that younger members, Ray Masucci and Scott Gilliland, also left. (Blozis Dep.

Tr., Exh. F at 53:3-13). Additionally, the record shows that Vargo, one of the original (and

younger) Gilmore team members left in 2001. (Thomas Decl., Exh. C at ¶ 4). Further,

confirmation of the absence of a scheme to get rid of older workers is evidenced by Blozis'

candid concession that she does not know why Gilmore wanted to get rid of older workers.

(Blozis Dep. Tr., Exh. F. at 36:23-37:8).

In contrast to Plaintiff's bald speculation and suppositions, the record evidence

establishes that Agne's employment was terminated for performance reasons; (Gilmore Dep.

Tr., Exh. E at 20:2-17; Becker Dep. Tr., Exh. G at 10:22-11:9); Bell resigned because of health-

related reasons (Thomas Dep. Tr., Exh. J at 49:14-24; Becker Dep. Tr., Exh. G at 49:23-50:15);

Squier resigned (Thomas Dep. Tr., Exh. J at 49:2-3; Gilmore Dep. Tr., Exh. E at 24:3-11); and

Fetters resigned (Thomas Dep. Tr., Exh. J at 48:14-22; Gilmore Dep. Tr., Exh. E at 22:24-

23:12).

**B.    Plaintiff's Claims of Sex Discrimination and Sex Harassment**

Since no male Portfolio Administrators have ever been assigned to the Delaware office

prior to or during Plaintiff's employment, Plaintiff can point to no comparable male employee in

Delaware. However, in straining to find a male comparator, Plaintiff turns to the Philadelphia

office. She alleges that Gilmore engaged in sex discrimination because a male portfolio

- 18 -

administrator, Dan Merlino, in Philadelphia was not as busy as the female portfolio administrators and that Merlino would defer to the female administrators. Although Plaintiff concedes that Merlino had the same duties as the female portfolio administrators, she claims that he should have known the answers to questions and not deferred to the females. She claimed that he Merlino did not pull his own weight, although she conceded that she did not know if Gilmore or Becker knew this. (Blozis Dep. Tr., Exh. F at 133:2-137:22).

In furtherance of her sex discrimination claim, Plaintiff alleges that as a female Portfolio Administrator she was not treated the same because as the only Portfolio Administrator in the Delaware office from March 2002 through July 2002, other Portfolio Administrators in Philadelphia should have been brought to Delaware to assist her. Although the 2002 allegations are time-barred, Plaintiff, nevertheless, holds this position despite her concession that she never requested Gilmore that this be done. (Blozis Dep. Tr., Exh. F. at 260:24-261:2).

Turning to her sexual harassment claim, Plaintiff contends, despite her admission that Gilmore never made any sexually related comments to her, that in 2002 or 2003, he would speak inappropriately to another female employee, whose name she could not remember, that worked in another part of Mellon and was not a part of the Gilmore Team. (Blozis Dep. Tr., Exh. F at 257:12-260:4). Plaintiff testified that she could not recall Gilmore's exact words, but he spoke to the unidentified female in a tone Plaintiff characterized as "gushing" or "flirting." (Blozis Dep. Tr., Exh. F at 258:16-22). As to her own group, Plaintiff testified that Gilmore would make what she considered to be "inappropriate" comments about how Dunlop's outfit looked or fit, although she could not recollect "exactly and specifically what he said." (Blozis Dep. Tr., Exh. F at 257:12-258:2). She conceded that she could not recall either Becker or Landis making any gender or age related comments, which is confirmed by Becker and Landis who state that they have not made any such comments. (Blozis Dep. Tr., Exh. F at 209:4-210:16; 211:22-212:4; Becker Decl., Exh. D at ¶ 20; Landis Decl., Exh. H at ¶ 30).

- 19 -

## C. Plaintiff's Claims of Retaliation

Plaintiff rounds out her Complaint by alleging that she received a Final Written Warning and her employment was ultimately terminated in retaliation for complaining about Gilmore because Gilmore out of "arrogan[ce]" was "grossly offended by [her May 1] complaint." (Blozis Dep. Tr., Exh. F at 117:24-118:21; 238:16-239:7)).  Plaintiff persists with this claim despite the record evidence that establishes that the decision to place Plaintiff occurred on April 30, <u>before</u> Plaintiff made her May 1 Complaint to Thomas.  (Thomas Decl., Exh. C at ¶ 10; Landis Decl., Exh. H at ¶ 15).  Moreover, the record establishes that Plaintiff's work did not improve after the receipt of the Final Written Warning, where as an example, she missed a deadline in completing the May stale price report and admitted it by saying, "In short, the task is not completed." (Blozis Dep. Tr., Exh. F at 272:8-14).  <u>See</u> Brief at 14-16.  Plaintiff testified further that she never completed the May stale price report.  (Blozis Dep. Tr., Exh. F. at 275:3-12).

## V. LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires that a properly supported motion for summary judgment be opposed only by competent evidence.  "When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).  In order for a plaintiff to avoid summary judgment, he must produce sufficient evidence from which a reasonable trier of fact can rule in his favor:

> [Summary judgment must be entered] against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

- 20 -

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c).  See generally Celotex, supra; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

Following Supreme Court precedent, the Third Circuit and this Court have consistently held that summary judgment should be granted in employment cases where a party fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  E.g., Spangle v. Valley Forge Sewer Auth., 839 F.2d 171, 173-74 (3d Cir. 1988).  See also Healy v. New York Life Ins. Co., 860 F.2d 1209 (3d Cir. 1988) (affirming grant of summary judgment in an ADEA case), cert. denied, 490 U.S. 1098 (1989); Hankins v. Temple Univ., 829 F.2d 437 (3d Cir. 1987) (affirming grant of summary judgment for employer in a Title VII action); Miller v. Aluminum Co. of America, 679 F. Supp. 495 (W.D.Pa.) (granting summary judgment for employer in a Title VII action), aff'd mem., 856 F.2d 184 (3d Cir. 1988).

As shown below, summary judgment is warranted in this case and Plaintiff's complaint, in its entirety, should be dismissed.  Even viewing the evidence in the light most favorable to Plaintiff, it is clear that her claims fall woefully short of establishing a case of age or sex discrimination, harassment, and retaliation under the applicable federal and state laws and should be dismissed with prejudice.

## VI.    LEGAL ARGUMENT

In Count I of her Complaint, Plaintiff alleges that Mellon terminated her employment on the basis of unlawful age discrimination under the ADEA and state law.  In Count II, she alleges a hostile work environment based on age in violation of the ADEA and state law.  In Count III, Plaintiff alleges sex discrimination and a hostile work environment based on sex in violation of

- 21 -

WILLIB-52562.2

Title VII and state law.  In Count IV, Plaintiff alleges that she was retaliatorily disciplined and later discharged for complaining about age discrimination in violation of the ADEA and state law.

To succeed on a claim of intentional discrimination under Title VII and the ADEA, a plaintiff must first prove a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); Kidd v. MBNA America Bank, 93 Fed. Appx. 399, 400 (3d Cir. 2004) (Courts apply the same McDonnell Douglas burden shifting analysis to actions asserted  under Title VII and the ADEA.). If proven, the burden then shifts to the employer to merely articulate some legitimate non-discriminatory reason for its conduct.  Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (commenting that employer's burden at this stage is "relatively light").  After the employer articulates its legitimate non-discriminatory reason, the plaintiff may then defeat a summary judgment motion only by setting forth some direct or circumstantial evidence from which a fact-finder could reasonably either: (1) disbelieve the employer's articulated reason; or (2) believe that discriminatory animus more likely than not was the motivating cause of the employer's action. McDonnell Douglas, 411 U.S. at 802. At all times, "[t]he ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the plaintiff remains . . . with the plaintiff." Burdine, 450 U.S. at 253; accord Keller v. ORIX Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997).[12]

_____

[12]    Because Plaintiff's claims of sex and age discrimination under Delaware law are identical to her Title VII and ADEA claims, the same analytical framework applies to her state law claims.  Riner v. National Cash Register, 434 A.2d 375, 376 (Del. 1981).

WILLLIB-52562.2

### A.    Count I and II of Plaintiff's Complaint Alleging Age and Sex Discrimination Must Be Dismissed

### 1.    Plaintiff Cannot Set Forth a Prima Facie Case of Age Discrimination.

A prima facie case of unlawful discrimination under the ADEA is comprised of four elements: 1) the plaintiff was over forty years old; 2) the plaintiff was qualified for the position; 3) despite the plaintiff's qualifications, the employer rejected his application for employment or took an adverse action that affected the terms and conditions of the plaintiff's employment; and 4) the position was filled or the plaintiff was replaced by a person sufficiently younger to create an inference of age discrimination. Reeves v. Sanderson Plumbing Prod., 530 U.S. 133, 142 (2000); Showwalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231, 234 (3d Cir. 1999).

Plaintiff's age discrimination claim fails to set forth a prima facie case of age discrimination. Simply stated, Plaintiff was not qualified for the Portfolio Administrator position because she was on corrective action for persistent performance problems which ultimately led to the termination of her employment. As the record evidence establishes, Plaintiff's placement on corrective action was the result of her failure to perform even the most basic components of her position. Being unable to perform the basics, it was impossible for her to perform at the heightened standards that her position required. After four years of doing Plaintiff's job, her supervisor, Becker, out of sheer frustration, reached out to Thomas for help in correcting Plaintiff's persistent performance problems. Accordingly, Plaintiff cannot establish a prima facie case of age discrimination. See Keeshan v. Home Depot, Inc., 2001 WL 310601, at *7 (E.D. Pa. Mar. 27, 2001) (age discrimination because plaintiff failed to establish qualification); Jones v. WDAS FM/AM Radio Stations, 74 F. Supp.2d 455, 466 (E.D. Pa. 1999); Payne v. Heckler, 604 F. Supp. 334, 339 (E.D. Pa. 1985) (holding that plaintiff failed to establish a prima facie case where she failed to show competent performance prior to discharge).

- 23 -

2.    **Mellon's Legitimate Reason for Terminating Plaintiff's Employment Satisfies Mellon's Burden of Production.**

Assuming for the sake of argument that the Court determines Plaintiff could prove a prima facie case of age discrimination, Mellon is still entitled to summary judgment. Once a plaintiff has established a prima facie case of age discrimination, a defendant may defeat the inference of discrimination by offering a legitimate, nondiscriminatory reason to explain the adverse employment action. Fuentes, at 764 (3d Cir. 1994). Mellon's burden "is one of production and not of persuasion" – it is a "relatively light" burden. Clifford v. Harleysville Group, Inc., No. 00-5432, 2001 WL 1530419, at *4 (E. D. Pa. Nov. 28, 2001) (citing Reeves, 530 U.S. at 142). The defendant does *not* have to prove "that the tendered reason actually motivated its behavior." Fuentes, 32 F.3d at 763. Rather, the defendant satisfies its burden of persuasion simply by articulating a nondiscriminatory reason for its action. Id.

In addressing the quantum of evidence necessary to avoid summary judgment, the Third Circuit has stated:

> [T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons, . . . , was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext). [To do so,] the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence' . . . and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'

Fuentes at 764.

Mellon's decision to terminate Plaintiff's employment for performance reasons is undisputedly, a legitimate non-discriminatory reason for its employment decisions. Silver v. American Institute of Certified Public Accountants, No. 05-4252, 2006 U.S. App. LEXIS 30035 (3d Cir. Dec. 6, 2006). This Court has confirmed this proposition. Jones v. UPS, Civ. No. 02-1449-SLR, 2004 U.S. Dist. LEXIS 14951, *12 (D. Del. July 24, 2004). Accordingly, Mellon has

- 24 -

proffered a legitimate, non-discriminatory reason for the decision to displace Plaintiff, thereby satisfying its burden of production.

3.   **Plaintiff Does Not Have Evidence that Would Permit a Reasonable Person to Conclude that Mellon's Termination of Plaintiff's Employment Was Motivated by Age Discrimination.**

Once a defendant has offered a nondiscriminatory reason for its action, a plaintiff may only avoid summary judgment if he produces some direct or circumstantial evidence that either 1) discredits the defendant's proffered reason for its adverse employment action, or 2) proves that discrimination was more likely than not the determinative cause of the defendant's action. Fuentes, at 764. This evidence "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contractions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence' and hence infer 'that the employer did not act for the asserted non-discriminatory reasons.'" Id. at 765 (internal citation omitted).

Plaintiff has "a difficult burden." Id. at 765. She cannot rely on mere speculation as to the motives behind Mellon's actions or the allegations of her Complaint. Plaintiff "must produce 'specific, substantial evidence of pretext'" to survive summary judgment. Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994) (citations omitted, emphasis added) (affirming grant of summary judgment in favor of defendant); See Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (mere conclusory allegations of discrimination are insufficient to defeat a summary judgment motion), cert. denied, 493 U.S. 1023 (1990); Felty v. Graves – Humphreys Co. 818 F.2d 1126, 1128 (4th Cir. 1987) ("unsupported speculation is not sufficient to defeat a summary judgment motion"). Additionally, Plaintiff is foreclosed from relying on inadmissible hearsay to defeat a claim for summary judgment. Williams v. Borough of West Chester, 891 F.2d 458, 465 (3d Cir. 1989). As established below, Plaintiff's age discrimination claims must fail because she

cannot show pretext in Mellon's articulated reason to terminate her employment and can offer no evidence of actual discriminatory intent.

        **a.**       **Plaintiff's Age Discrimination Claims Fail As a Matter of Law**
                 **Because Pretext Cannot be Shown**

        **i.**       **Plaintiff has wholly failed to establish an elaborate plan**
                 **by Mellon and Gilmore to get rid of older workers**

Armed with no more than rank supposition, hearsay and speculation, Plaintiff contends that Gilmore and Mellon concocted a secret scheme to replace the older workers on the Gilmore Team with younger workers. In support of her contention, she self-selects a number of "older" employees, one of which (Smith) was not even on Gilmore's Team, as examples of individuals who were either unjustly terminated or forced out because of age. Although the record shows that one individual, Agne, was terminated for performance and the remaining individuals resigned, Plaintiff, based nothing more than speculation attaches an age bias to their departures. However, Plaintiff's contentions are belied immediately by her own concessions that, among other things, she never evaluated these individuals, they never told her that age was the reason they left Mellon, and she is relying on at times double hearsay of what some of the departing employees told her. Accordingly, her self-styled contentions that older workers were forced out to make room for younger workers cannot establish pretext. <u>Williams</u>, 891 F.2d at 460 (a party may not defeat summary judgment by simply reasserting factually unsupported allegations contained in its pleading or by introduction of hearsay statements).

            **ii.**       **Plaintiff's beliefs that the criticisms of her performance**
                     **and older workers' performance were unwarranted are**
                     **insufficient to create a genuine**
                     **issue of material fact**

In support of her assertions that Gilmore unlawfully criticized her work and the work of other "older workers", Plaintiff merely offers her own conclusory beliefs about the older workers' performance and her own. In her own case, Plaintiff's assertion that criticism of her work was

WILLLIB-52562.2

unjustified, in addition to being legally insufficient, does not even pass the "straight face" test. Plaintiff makes this argument against the consistent and documented recognition by her supervisors, as memorialized in her 2002 performance review and work product, that she failed to submit projects on a timely basis, made numerous errors, was inattentive to detail, and lack sufficient product knowledge. (See Brief at 6-16). Further erasing any doubt of age animus is the fact that recognition of Plaintiff's performance deficiencies began formally in February 2003 when she received her Initial Written Warning - 7 months before her employment was terminated.

Plaintiff's personal assessment of Bell, Squier[13], Fetters and Agne's work is even more attenuated. Plaintiff, having performed no evaluations, of the "older" workers' work, proclaims that Gilmore was wrong in his assessment and piled on work to force them out. Plaintiff offers no evidence of this beyond her own self-styled opinions. However, none of Plaintiff's contentions concerning her own performance or the performance of Bell, Squier, Fetters or Agne can defeat summary judgment. It is well established that an employee's opinion of her own performance or abilities is insufficient to create a genuine issue of material fact. Billet v. Cigna Corporation, 940 F.2d 812, 825 (3d Cir. 1991). "The fact that an employee disagrees with an employer's evaluation of him does not prove pretext." Id. Plaintiff's mere assertion that Mellon was "wrong" is not relevant and cannot defeat summary judgment. See Sempier v. Johnson & Higgins, 45 F.3d 724, 731 (3d Cir.), cert. denied, 515 U.S. 1159 (1995) ("[p]retext is not demonstrated by showing simply that the employer was mistaken").

---

13    Plaintiff testified in her deposition that Squier left Mellon in the 1990s. (Blozis Dep. Tr., Exh. F at 44:7-45:2). She filed her EEOC Charge on May 7, 2004. Any allegations, inclusive of her allegations concerning Squier, that occurred 300 days before May 7 or prior to July 13, 2003 are untimely and, cannot, be used to support any of her claims. Childress v. Dover Downs, Inc., Civ. Act. No. 98-206-SLR, 2000 U.S. Dist. LEXIS 4881 (D. Del. Mar. 31, 2000).

- 27 -

WILLIB-52562.2

Plaintiff's claim of age discrimination is belied further by the fact that Plaintiff has failed to come forth with any credible evidence that younger Portfolio Administrators on the Gilmore Team were treated more favorably than herself, particularly where no other Portfolio Administrators were on corrective action. (Thomas Decl., Exh. C at ¶ 14; Landis Decl., Exh. H at ¶¶28-29). Taylor v. Potter, Civ. Act. No. 03-1105 KAJ, 2004 U.S. Dist. LEXIS 16629, *10-11 (D. Del. Aug. 2, 2004) aff'd 2005 U.S. App. LEXIS 17859 (3d Cir. Aug. 18, 2005) (summary judgment granted where plaintiff failed to show that others not in the protected group were treated more favorably beyond her conclusory allegation).

Faced with her inability to identify any credible evidence to rebut Mellon's legitimate reason for terminating her employment, Plaintiff is left only to proclaim that Mellon's conduct had to be as a result of age [and sex] discrimination because there is no other explanation acceptable to her. (Blozis Dep. Tr., Exh. F at 208:8-209:3). However, Plaintiff's unsupported personal beliefs are wholly insufficient to preclude summary judgment as they do not rise to the level of competent evidence demonstrating "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Mellon's proffered reason necessary to believe that the reason is "unworthy of credence." Fuentes, 32 F.3d at 765; Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1982). See also Hornsby v. Conoco, Inc., 777 F.2d 243, 246 (5th Cir. 1985) (subjective belief of discrimination is not sufficient to establish age discrimination claim); La Fleur v. Westridge Consultants, Inc., 844 F.Supp. 318, 324 (E.D. Tex. 1994) (subjective belief insufficient to establish claims of race and sex discrimination).

Further erasing any indicia of age discrimination is the fact Gilmore was only one year younger than Plaintiff, when the decision was made to place her on corrective action and eventually to terminate her employment. Courts have acknowledged that when the alleged discriminator is a member of the plaintiff's own protected class, this fact weakens any possible inference of discrimination. See Dungee v. Northeast Foods, 940 F.Supp. 680, 688, n.3 (D.N.J.

- 28 -

1996) (undermining inference of discrimination was fact that final decisionmaker and interviewers of unsuccessful female applicant were also female) <u>Rooks v. Girl Scouts of Chicago</u>, No. 95-3516, 1996 WL 459941 at *4 (7th Cir. Aug. 9, 1996) ("[T]here can be no compelling inference of age discrimination because [decisionmaker] herself is also in the protected category"); <u>Marlow v. Office of Court Administration, State of New York</u>, 820 F.Supp. 753 (S.D.N.Y. 1993), <u>aff'd</u>, 22 F.3d 1091 (2nd Cir.), <u>cert.</u> <u>denied</u>, 513 U.S. 897 (1994) (pointing out that because some of the decisionmakers were members of the same protected group as plaintiff, plaintiff's ability to raise an inference of discrimination was hampered).

Accordingly, Plaintiff's subjective, even good faith, belief that her employment was terminated because of age discrimination cannot create pretext and preclude summary judgment.

### iii. Plaintiff's Random Remaining Assumptions and Accusations Cannot Establish Pretext.

In a final desperate attempt to establish pretext where there is none, Plaintiff offers a potpourri of reasons to support her age claim in the vain hope that "something will stick" by: (1) claiming that Gilmore was not as jovial to her and older workers as he was to younger workers; (2) pointing to Gilmore's reference to her as a "survivor" on a single instance on April 1, 2003; (3) Gilmore's use of profanity at the April 1, 2003 meeting; (4) she was not given a bonus in 2003 for 2002 performance; and (5) she was allowed to take 6 vacation days and not the 10 she requested.  For the reasons set forth below, none of Plaintiff's allegations create a material issue of fact sufficient to preclude summary judgment.

### a. Gilmore's alleged lack of civility to the older workers cannot create a material issue of fact

Plaintiff's allegations based on her own subjective beliefs that Gilmore was more jovial to the younger workers than the older workers to the older workers and not the younger ones cannot support her age discrimination claims.  As confirmed by the United States Supreme

- 29 -

Court in <u>Burlington Northern & Santa Fe Railway Co. v. White</u>, 126 S.Ct. 2405, 2415 (2006),

"Title VII does not set forth a general civility code for the American workplace."

**b.    <u>A single stray remark cannot create a material issue of fact</u>**

Next, Plaintiff takes the ill-fated tack of pointing to a single remark allegedly made by

Gilmore in which she claims that Gilmore called her a "survivor" during the April 30 meeting.

Plaintiff believed that was an ageist comment made because she was the last remaining original

member of the Gilmore Team.  While she acknowledges that both she and Gilmore were the

last two remaining members, she, nonetheless, believed that the term was indicative of age

discrimination.  Again, Plaintiff is wrong factually and legally.  From a factual reference point,

Holmquist, Chambliss and Marano were younger than both Plaintiff and Gilmore and were a

part of the original team.  (<u>See</u> Brief at 4-5, 12, 14).

<u>Casey v. Zeneca Inc.</u>, Civ. Act. No. 93-514 (MMS), 1995 U.S. Dist. LEXIS 5656, at *37-

38 (D. Del. Mar. 31, 1995), confirms Mellon's legal position.  There, this Court found that a

supervisor's reference to "round out of the balance" of her team did not "connote any inference

of age prejudice" as the plaintiff contended and ultimately granted the defendant's summary

judgment motion.  Equally persuasive is the Court's decision in <u>Thrower v. The Home Depot</u>,

Civ. Act. No. 04-577, 2005 U.S. Dist. LEXIS 21389 (W.D. Pa. Sept. 27, 2005).  In <u>Thrower</u>, the

plaintiff alleged that his supervisor's comments that the plaintiff needed to show more fire and

energy in his job were indicia of age discrimination.  The district court disagreed, and in

language equally applicable here, states: "[t]he Court finds that these statements were age

neutral and merely constituted stray remarks which are insufficient to support an inference of

discrimination as they lack any substantive or temporal connection to the decision-making

process at issue." <u>Thrower</u>, 2005 U.S. Dist. LEXIS, at * 28.

Here, the alleged "survivor" remark, in addition to failing to "connote any inference of age

prejudice" on its face, cannot establish pretext because the alleged comment was completely

- 30 -

unrelated to the decision to place Plaintiff on Final Written Warning and to subsequently terminate her employment.  (See Brief at 10-16).  Ezold, 983 F.2d at 545 ("Stray remarks by a non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of the decision.") (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)).  See also Wien v. Sun Company, Inc., No. Civ.A. 95-7646, 1997 WL 772810, *4 (E.D. Pa. Nov. 21, 1997) (summary judgment proper because statement of alleged bias was not evidence of discrimination since it was unrelated to the decision process at issue and was made temporally remote to the decision).

Finally, any allegation by Plaintiff that Gilmore held some discriminatory animus against her is undermined by the fact that Gilmore is only 1 (one) year younger than Plaintiff.  As such, any claims by Plaintiff of discriminatory animus are legally insufficient.  Dungee, supra; Rooks, supra; Marlow, supra.

        **c.**     **Gilmore's alleged use of profanity and raising his voice during the April 30 meeting does not establish pretext**

Plaintiff alleges that during the April 30 meeting, Gilmore raised his voice at her and used profanity.  However, this does not establish pretext.  Plaintiff admits candidly that Gilmore used profanity in meetings with both male and females members of his team.  See Brief at 11.  Moreover, upon further questioning during her deposition, Plaintiff retreated from her position and testified that she could not "say at this time" whether Gilmore used the profanity because of her age or gender.  Instead of resting her position on age and gender, she, instead, testified that it may have been used for "shock value" or "scare tactics."  (Blozis Dep. Tr., Exh. F at 151:6-152:3).  In any event, Plaintiff's contentions fail to establish pretext as the discrimination laws are not intended to be civility codes.  Burlington, 126 S.Ct. at 2415; Miller, 695 F. Supp. at 501 (no Title VII violation where males and females were treated the same).

- 31 -

### d. Blozis' failure to receive a bonus for 2002 performance cannot establish age discrimination

Blozis argues that her failure to receive a bonus in 2003 for 2002 work was because of age discrimination. However, because Plaintiff was placed on corrective action in 2003 for 2002 performance, she was ineligible for a bonus. No other portfolio administrators on the Gilmore Team were on corrective action in 2002. (Thomas Decl. at Exh. C at ¶ 19) Again, Plaintiff's inability to point to a comparator that was treated more favorably defeats her ability to establish age discrimination.

### e. The reduction in the number of vacation days that Plaintiff was allowed to take in May 2003 was not indicative of age discrimination

Next, Blozis contends that age discrimination is established because she was allowed to take only 6 vacation days in May and Dunlop, the younger Portfolio Administrator, was allowed to take 7. Neither the facts or the law support Plaintiff's claim. By a March 13, 2003 e-mail to Landis, Plaintiff requested to take May 5, 2003 – May 16, 2003 as vacation days. After review of her request, and based on office coverage issues, Plaintiff was allowed to take (6) six days: May 2, May 5-9.[14] (Blozis Dep. Tr., Exh. F at 302:15-304:17). Plaintiff alleges that this was discriminatory because Dunlop was allowed to take (7) seven days for her wedding and honeymoon. (Blozis Dep. Tr., Exh. F at 305:14-307:1). When questioned why she felt this was age discrimination, Plaintiff testified that it "could very well have been part of what [she] considered a systematic plan to dismiss [her]." (Blozis Dep. Tr., Exh. F at 307:2-20). Again, Plaintiff's conjecture, particularly in the wake of a legitimate reason for the one day differential between her and Dunlop, cannot defeat summary judgment. Thus, for all the above reasons,

---

14     The March 13, 2003 e-mail from Plaintiff to Landis and Landis' response thereto is included in the Appendix as "Exh. X".

WILLIB-52562.2

Plaintiff cannot establish that the legitimate non-discriminatory reason forwarded by terminating her employment was pretext and, summary judgment should be granted dismissing Count I of the Complaint.

**4.    Plaintiff's Sex Discrimination Claims Must Be Dismissed Because She Cannot Establish A Prima Facie Case Or Show That Defendants' Reasons For Terminating Her Employment For Performance Was Pretextual**

Regardless of Plaintiff's subjective speculation that her employment was terminated because of her sex, there is simply not even a *scintilla* of evidence that the circumstances of her termination give rise to an inference of sex discrimination sufficient to establish a *prima facie* case under Title VII. See Defendants' Brief at 23. Rather, as confirmed by Defendants' arguments opposing Plaintiff's age claim, the evidence shows conclusively that Defendants' decision to terminate Plaintiff's employment was based on legitimate performance deficiencies. This Court's decision in Jones, 2004 U.S. Dist. LEXIS 14951, at *12-13, confirms Defendants' position. Based on very analogous facts, and in language equally applicable here, this Court in Jones found that plaintiff had failed to show pretext in her sex discrimination claim because "[she] has provided no evidence that would allow a factfinder to reasonably disbelieve that her unsatisfactory evaluations, numerous performance deficiencies and insubordination were the reasons for plaintiff's termination." Id. at 13. The same result should occur here and Defendants' summary judgment motion must be granted.

In stark contrast to Defendants' record evidence supporting their arguments, Plaintiff cannot offer any competent evidence that Defendants' articulated non-discriminatory reasons for terminating her employment was a mere pretext for unlawful sex discrimination. Anderson v. McIntosh Inn d/b/a Courtyard Mariott, 295 F. Supp. 2d 412, 419-421 (D. Del. 2003) (noting analysis at pretext stage differs from analysis of prima facie elements insofar as standard at pretext stage is "more stringent" and granting summary judgment for employer upon finding plaintiff failed to establish *prima facie* case of discrimination) (citing Maull v. Division of State

- 33 -

Police, 141 F. Supp. 2d 463, 483 (D. Del. 2001)); Lamb-Bowman v. Del State Univ, 152 F.

Supp. 2d 553, 559-60 (D. Del. 2001) (same).

Further erasing any credible claim of sex discrimination is the fact that Plaintiff cannot

point to any similarly-situated male Portfolio Administrator who was treated more favorably.

This is confirmed readily by the fact that no male Portfolio Administrators were ever assigned to

the Delaware office during the period of Plaintiff's employment.  (See Brief at 18-19).  Realizing

the futility of her claims, Plaintiff resorts to conclusory statements about Merlino, a male Portfolio

Administrator, in the Philadelphia office and alleges that he did not work as hard as his female

counterparts.  Plaintiff desperately seeks to buttress this conclusory statement by adding that

when Merlino was asked a question, she thought he should have known the answer and

inappropriately deferred to his female colleagues; yet she has no knowledge that Becker or

Gilmore was aware of this.  Such bald speculation does not support a sex discrimination claim.

Under analogous facts, this Court reached the same conclusion in Childress v. Dover Downs,

Inc., supra.  In Childress, this Court held that the female plaintiff failed to establish a prima facie

case of sex discrimination where plaintiff failed to show that similarly situated males were

treated more favorably and failed to show pretext where there was record evidence of

performance issues with plaintiff.  Childress, 2000 U.S. Dist. LEXIS 4881, at *42; Jones, 2004

U.S. Dist. LEXIS 14951, at *12.

Thus, insofar as Plaintiff cannot identify any similarly-situated male Portfolio

Administrator who was treated more favorably than herself, nor can she offer any competent

evidence to otherwise support an inference that her discharge was motivated by discrimination,

summary judgment must be granted in Defendants' favor.

- 34 -

**B.    Count II and Count III of Plaintiff's Complaint Alleging Hostile Work Environment Claims Based On Age and Sex Must Be Dismissed**

The undisputed record evidence makes clear that Plaintiff cannot establish a hostile work environment claim based on age or sex.  Plaintiff's age harassment claim is based on Gilmore's use of profanity in the April 30 meeting; being more "jovial" to the younger workers; and calling her a "survivor" on a single occasion during the April 30 meeting.  Plaintiff seeks to bootstrap these self-styled age claims to her sex harassment claims in addition to referencing vague and ambiguous "inappropriate" statements she claims she heard Gilmore make to Dunlop about Dunlop's attire.  Having conceding candidly that Gilmore never made any sexually related comments to her (Blozis Dep. Tr., Exh. F at 260:24-261:2), she desperately expands her claim to include "inappropriate" statements she claimed to have overheard Gilmore make to another woman, whose name she could not recall, some time in 2002 or 2003, who worked in a separate department.  Plaintiff self-described Gilmore's conduct as "gushing or flirting."  (Blozis Dep. Tr., Exh. F at 257:12-261:2).  As shown below, application of these contentions to the applicable law compels dismissal.

As an initial matter, it is unsettled whether the Third Circuit recognizes hostile environment claims in ADEA cases.  Glanzman v. Metropolitan Management, 290 F.Supp. 571, 581 (E.D. Pa. 2003).  To the extent that it does, there are five elements to the claim: (1) intentional discrimination because of age which is (2) pervasive or regular, (3) has detrimental effects that (4) would be suffered by a reasonable person of the same age in the same position, and (5) that respondent superior liability exists.  Id.  This analysis applies equally to hostile work environment claims based on sex.  Andrew v. Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990); Calloway v. E.I. DuPont, Civ. Act. No. 98-669-SLR, 2000 U.S. Dist. LEXIS 12642 (D. Del. Aug. 8, 2000).  Plaintiff cannot satisfy these basic requirements.

- 35 -

As an initial matter, Plaintiff has failed to demonstrate that age or sex was a substantial factor in Gilmore's conduct. See, e.g., Calloway, 2000 U.S. Dist. LEXIS 12642 at *15-17. Plaintiff's own deposition testimony refutes her claim that Gilmore's use of profanity was gender-based because she testified that he said it for "shock value" and "scare tactics" (Blozis Dep. Tr., Exh. F at 151:6-152:3) and she could recall no specific comments made by Becker or Landis. (Blozis Dep. Tr., Exh. F at 209:4-20; 211:22-212:4). Equally damaging to her claim is that Gilmore used profanity in Becker's presence as well as in team meetings where both men and women were present. (Blozis Dep. Tr., Exh. F at 90:11-91:9). Plaintiff's reliance on the "survivor" comment is equally unavailing because it is age-neutral and other gender-neutral references to him as being more "jovial" to younger workers do not advance her claim.

Confirming Defendants' position is this Court's decision in Calloway, 2000 U.S. Dist. LEXIS 12642, at *16-17, where this Court found that plaintiff failed to demonstrate that gender was a substantial factor in the alleged discrimination where plaintiff's allegations consisted of facially gender-neutral conduct and her allegations of her supervisor's unprofessional and spiteful behavior and dismissed the plaintiff's sexual harassment claim. Id. The same result should occur here.

Plaintiff's age and sex harassment claims fail for another independent reason. The evidence regarding Plaintiff's claims fall far short of constituting a pattern of conduct so "pervasive or regular" that it alters the terms or conditions of employment. Calloway, 2000 U.S. Dist. LEXIS 12642, at *17-18. Thus, Plaintiff cannot even establish the existence of a cognizable "hostile work environment." Plaintiff's vague and ambiguous references to Gilmore's comments about Dunlop's attire and his alleged and possibly time-barred, comments to an unnamed woman that Plaintiff describes as "gushing" or "flirting" do not support her claims. Calloway, 2000 U.S. Dist. LEXIS, 12642 at *20-24 (citing Bishop v. National R.R. Passenger Corp., 66 F. Supp.2d, 650, 664 (E.D. Pa. 1991) (finding inactionable under Title VII conduct

WILLIB-52562.2

consisting merely of staring, leering and 'stud muffin' comments)); Shramban v. Aetna, 115 Fed. Appx. 578 (3d Cir. 2000) (comments made by supervisor to plaintiff about personal life, clothes, jewelry and appearance did not constitute actionable hostile environment based on sex).

Offensive or harassing conduct rises to the level of a violation of Title VII only when the workplace becomes "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 78 (1988) (emphasis added) (quoting Harris v. Forklift Sys., 510 U.S. 17, 21 (1993)).  Finally, when considering whether an actionable hostile work environment claim exists, courts are to consider all of the circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance.  Harris, 510 U.S. at 23; Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998).  Plaintiff's claims fall woefully short of satisfying this legal standard.

A third reason for dismissing Plaintiff's claims is that there is no basis for imputing liability to Mellon.  Plaintiff complained only on May 1 about Gilmore's alleged age comment. She never complained about sexual harassment or any other type of discrimination.  (Thomas Decl., Exh. C at ¶ 21).  Mellon immediately responded to and investigated Plaintiff's internal age complaint and found that there was no basis for her claim.  Plaintiff does not allege that Gilmore made any subsequent age-related comments.  Against this backdrop and as the Third Circuit has explained "when an employer's response stops the harassment, there can be no employer liability under Title VII." Weston v. Pennsylvania, 251 F.3d 420, 427 (3d Cir. 2001).  The undisputed evidence makes clear that such is the case here.

**C.    Plaintiff's Age Retaliation Claim Must Also Be Dismissed[15].**

Plaintiff claims that her May 2003 Final Warning and the ultimate termination of her employment two months later in July 2003 were the result of unlawful retaliation. Plaintiff's retaliation claim, however, contains many of the same – as well as additional – legal infirmities as her age and sex discrimination claims. Indeed, despite Plaintiff's bald assertions to the contrary, and as discussed fully *infra*, the record is entirely devoid of any evidence through which Plaintiff can demonstrate a cognizable ADEA retaliation claim.

To state a retaliation claim under the ADEA, Plaintiff bears the burden of proving each of the following elements: (1) that she was engaged in a protected activity known to the defendant; (2) that she was subsequently or contemporaneously subjected to an adverse employment decision by the defendant; and (3) there was a causal link between the two. Kidd, 93 Fed. Appx. at 401; Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997), cert. denied, 522 U.S. 914 (1997); Jalil, 873 F.2d at 708. Application of the facts to the applicable law compels dismissal of Plaintiff's retaliation claim.

Here, Plaintiff made an internal age discrimination complaint to Thomas about Gilmore on May 1, 2003 and then went on vacation for six days. However, the decision to place Plaintiff on Final Written Warning occurred on April 30, one day prior to her complaint. As such, the corrective action decision preceded the complaint and there can be no retaliation.

Likewise, the record does not support Plaintiff's retaliatory discharge theory. Prior to her May 1 complaint, Plaintiff had been placed on an Initial Written Warning on February 11, 2003 – approximately 3 months before she even complained to Thomas. A review of the record shows that since being placed on the Initial Written Warning, Plaintiff's performance did not improve

---

15    Retaliation claims follow the same three-step, burden shifting analysis applicable to disparate treatment claims. Krouse v. American Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997); see also, generally, Lamb-Bowman, 152 F. Supp. 2d at 559-61.

WILLIB-52562.2

and Plaintiff acknowledges that her review stated that if there was no improvement that she would be issued a Final Written Warning. (Blozis Dep. Tr., Exh. F at 230:16-22). As the record shows, Plaintiff's performance issues persisted. See Defendants' Brief at 6-16. In fact, there were numerous performance problems found in the early weeks of May 2003, prior to the issuance of the May 19, 2003 Final Written Warning.

Against the voluminous examples of her performance problems, Plaintiff simply cannot demonstrate that there is a sufficient causal connection or temporal "link" between her alleged protected activity – her May 1 internal complaint and her placement on Final Written Warning on April 29, 2003, one day prior, and the eventual termination of her employment on July 19, 2003. Neither can Plaintiff establish that Defendants' proffered legitimate reason for terminating her employment could be viewed as a pretext for unlawful retaliation. This Court in Calloway, 2000 U.S. Dist. LEXIS 12642 at *31-35, reached the same conclusion and dismissed the plaintiff's retaliation claim where, as here, the record demonstrated that the plaintiff could not show pretext where she had numerous performance issues. Accordingly, Plaintiff's retaliation count must be dismissed.

- 39 -

WILLIB-52562.2

## VII. CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court enter an Order (i) granting their Motion and awarding Summary Judgment in their favor and against Plaintiff on all claims contained in Plaintiff's Complaint; (ii) dismissing Plaintiff's Complaint in its entirety with prejudice; and (iii) awarding such other and further relief as is just and appropriate.

Respectfully submitted,

REED SMITH LLP

BY:    /s/ Thad J. Bracegirdle
Thad J. Bracegirdle (No. 3691)
1201 Market Street, Suite 1500
Wilmington, DE 19801
(302) 778-7500

John Unkovic (admitted *pro hac vice*)
435 Sixth Avenue
Pittsburgh, PA 15219
(412) 288-3131

Stephanie Wilson (admitted *pro hac vice*)
Sherri A. Affrunti (admitted *pro hac vice*)
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, NJ 08540
(609) 987-0050

Attorneys for Defendants

Dated:  March 1, 2007

WILLIB-52562.2