# EXHIBIT H

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | : | |
| LINDA J. BLOZIS | : CIVIL ACTION NO. 05-891 (SLR) | |
| Plaintiff, | : | |
| vs. | : | DECLARATION OF |
| | | GREGG L. LANDIS |
| MELLON TRUST OF DELAWARE, | : | |
| NATIONAL ASSOCIATION; MELLON | | |
| BANK, NATIONAL ASSOCIATION; | : | |
| MELLON FINANCIAL CORPORATION, | | |
| | : | |
| Defendants. | | |
| | : | |

I, Gregg L. Landis, of full age, hereby certify and declare as follows based upon my own personal knowledge and information.

1.      I began working for Mellon in its Private Asset Management group in 1996 as an Assistant Vice President.  At that time, I worked out of Philadelphia.  In or about 1999, I was promoted to Vice President and transferred to the Delaware office.  I am currently employed as Senior Director for Mellon, and have worked in this position since approximately January 2006.  I have been authorized by Mellon to make this Declaration in support of its Motion for Summary Judgment in the above-captioned matter.

2.      In my capacity as Vice President or Senior Portfolio Manager, as my position was also described, from approximately January 2003 to the time that Ms. Blozis' employment was terminated in July of 2003, I supervised Ms. Blozis' work.  As Portfolio Administrator, her job was to provide support to me, which, in turn, enabled me

to service the clients' portfolios that were assigned to me.  We serviced individual clients with portfolios of generally at least one million dollars in value.

3.     During the time that Ms. Blozis reported to me, I was aware of certain performance issues.  I was also aware that Ms. Blozis' previous supervisor, Mr. William Becker, had placed her on an Initial Written Warning for performance problems in her February 2003 performance review and that immediate and sustained improvement in her performance was required.

4.     As her supervisor, it was my responsibility to review regularly Ms. Blozis' work.  I reviewed her work product and would keep proper track of it, so that it could be used as a teaching or training device with Ms. Blozis.  In this way, I was personally aware of Ms. Blozis' performance issues.

**Problems With Ms. Blozis' Work**

5.     On January 30, 2003, I reviewed an Investment Review that Ms. Blozis completed for one of our clients.  I noted that Ms. Blozis had stated that the client had a "tax exempt" stock model where the correct description was "tax efficient."  Additionally, she had supplied information incorrectly using a taxable index incorrectly where she should have used a tax free index for the benchmark because this client had a municipal bond fund in trust.  Ms. Blozis' errors on this document showed that she was inattentive to detail and lacked sufficient knowledge of Mellon's products and how they interacted with the client's account.  As a Portfolio Administrator, she should have been aware of this.  A true and correct copy of the Investment Review with my notes is attached hereto as **Exhibit 1**.

- 2 -

6.     On January 31, 2003, Ms. Blozis had printed an Agenda for a meeting with a client.  The Agenda had glaring numbering errors that Ms. Blozis should have caught.  Each category was numbered "I" instead of being numbered consecutively. The error was caught by Mr. Becker who reprinted it himself.  A true and complete copy of the Agenda with my notes is attached hereto as **Exhibit 2**.

7.     Ms. Blozis failed to timely complete projects.  As an example, I had asked Ms. Blozis for information on a particular client on February 5, 2003.  As of February 23, 2003, it still was not completed. It was finally completed four days later on February 27, 2003.  I felt this was too long of a delay in providing the information.  I also felt that Ms. Blozis did not show the same type of commitment toward completing her assignment, since I was working on Sunday to get client information completed.  True and complete copies of the e-mail chain concerning this client and containing my notes is attached hereto as **Exhibit 3**.

8.     Ms. Blozis compounded her errors by failure to attend to details.  She drafted a letter dated March 19, 2003 where the client's assets failed to total 100%. This was a basic math error.  Similarly, on another Statement of Investment Policy that I reviewed on March 17, 2003 Ms. Blozis' calculation of the asset allocations totaled 110% instead of 100%.  True and complete copies of the March 19 letter and Policy with my notes are attached hereto as **Exhibit 4**.

9.     I reviewed an email that Ms. Blozis sent me on March 21, 2003.  After reviewing the e-mail, I noted that Ms. Blozis had improperly sent proxy material in 2002 to the same client and the client was still erroneously receiving the reports in 2003, after

- 3 -

Ms. Blozis was told previously about this mistake.  A true and complete copy of the

March 21 e-mail with my notes is attached hereto as **Exhibit 5**.

10.    On March 31, 2003, I reviewed Asset Allocation Risk Profile

Questionnaires that Ms. Blozis had completed for four clients.  I noticed that they had

unusually high cash percentages and no allocations to international and emerging

markets.  I questioned Ms. Blozis about this and told her that she had to do further

research.  Again, this was an example of Ms. Blozis' failure to understand her job,

Mellon's products, and proper servicing of the clients' accounts.  True and complete

copies of my notes and the Questionnaires are attached hereto as **Exhibit 6**.

11.    On April 21, 2003, I asked Ms. Blozis about the status of the April 2003

stale price report.  Its completion had been on her March "to do" list and we had

discussed this at our meeting on March 12, 2003.  On April 25, 2003, Ms. Blozis stated

that she had been working on other matters and that it was not a priority.  However, I

felt that it should have been completed and that she was not managing her time in order

to complete her projects in a timely manner.  A true and complete copy of the April 2003

e-mail chain and my notes is attached hereto as **Exhibit 7**.

12.    On April 24, 2003, I corrected another Investment Review that Ms. Blozis

had prepared.  She had described the Portfolio Objectives as "balanced" when in fact

the Portfolio was not balanced because it consisted of 93% stocks.  It was instead,

correctly described as aggressive.  The mistakes were similar to mistakes that I had

corrected and had discussed with her in the past.  Because Ms. Blozis kept making the

same types of mistakes, it showed a lack of understanding of basic investment concepts

PRCLIB-436194.1-SWILSON 2/25/07 1:14 PM

and words. A true and complete copy of the Investment Review with my notes is attached hereto as **Exhibit 8**.

13.    On April 29, 2003, I noticed three problems with an Investment Review that Ms. Blozis had prepared for a client. She had stated that the account was balanced, although it was not. Her characterization of the account as balanced showed a lack of understanding. I had corrected this type of mistake previously and brought this to her attention, yet she made the same mistake. The Review contained other errors. She used a taxable bond index for an account with municipal bonds. I had brought this to her attention before as evidenced by my notes on Exhibit 1. Again, this type of error showed a lack of understanding. Moreover, the client had made major withdrawals from his account and she should have compiled a list showing the major withdrawals because the client might inquire why his account balance was declining. True and complete copies of my notes and the Review are attached hereto as **Exhibit 9**.

14.    Ms. Blozis continued to show a lack of understanding of her work as reflected by a Statement of Investment Policy that she completed. As an example, the Risk Tolerance was not "moderate to high" as she described; it was "low to moderate." Similar to other mistakes, she failed to understand that a portfolio containing 30% in stocks is not a moderate to high risk. A true and complete copy of the Policy with my notes is attached hereto as **Exhibit 10**.

15.    On March 31, 2003, Ms. Blozis was assigned the task of completing client booklets. On April 24, 2003 she acknowledged that she would prepare the booklets. However, on April 30, 2003, she had not completed them and left for vacation without completing them. I understand that this was a subject of a meeting between Mr.

- 5 -

Brendan Gilmore, my supervisor and Team Leader, with Ms. Blozis on April 30. Because of this and other continuing performance problems since she was placed on Initial Written Warning in February 2003, a discussion was held on April 30 with Rosemary Thomas, our human resources manager, and Mr. Gilmore about placing Ms. Blozis on Final Written Warning and it was determined that Ms. Blozis would be placed on Final Written Warning. A true and complete copy of the April 24, 2003 e-mail exchange between Plaintiff and me along with my handwritten notes is attached as **Exhibit 11**.

16.    On May 7, 2003, I e-mailed Mr. Gilmore about the status of the client booklets. Mr. Gilmore told Ms. Blozis that she had to complete the booklets before leaving for her vacation. Ms. Blozis left for vacation on May 1, 2003 without completing the booklets. Her co-worker, Ms. Dunlop, completed the booklets. In addition, upon review of the booklets, it was discovered that Ms. Blozis had run a market value history for only two years for a long term account and that the history should have been run from 1990. We had previous discussions about providing long term clients with sufficient historical account information. However, this was not done and the booklets had not been completed as we had instructed. A true and complete copy of my e-mail to Mr. Gilmore is attached hereto as **Exhibit 12.**

17.    On May 9, 2003, I sent Mr. Gilmore an e-mail describing the problems I had found with Ms. Blozis' performance while she was on vacation. I copied Mr. Paul Kochis, Mr. Gilmore's supervisor, and Ms. Thomas. Upon review, I found that Ms. Blozis had sent an incomplete recommendation to a client that made Mellon look very unsophisticated to an important client. Additionally, Ms. Blozis had failed to complete

- 6 -

yet another assignment that I gave her.  Specifically, on April 7, 2003, I gave Ms. Blozis a draft Investment Recommendation for a client along with three directions on the recommendation.  Upon my review, no work had been done.  A true and complete copy of the May 9 e-mail is attached hereto as **Exhibit 13**.

18.    A goal for Portfolio Assistants was for them is to ultimately make first draft Investment Recommendations, but Ms. Blozis had proven incapable of even basic follow up and time management.  In response to the May 9 e-mail, Mr. Kochis stated that Ms. Blozis' conduct was "gross negligence or insubordination" and he recommended her immediate termination upon her return from vacation.  Id.

19.    On May 13, 2003, upon reviewing an Investment Review, Ms. Blozis provided only one year of account performance.  Since the accounts had been with Mellon since 1998, it was the practice to show the clients as much history and performance as possible.  Ms. Blozis should have known this.  A true and complete copy of the Investment Review with my notes is attached hereto as **Exhibit 14**.

20.    Still another example of Ms. Blozis' failure to understand her job is reflected by my May 13, 2003 review of a Combined Investment Form that Ms. Blozis completed.  I noted that Ms. Blozis reported 2002 gains/losses where she should have reported 2003 information.  A true and correct copy of the Form with my notes is attached hereto as **Exhibit 15**.

21.    On May 13, 2003, I reviewed a Combined Equity Diversification form that Ms. Blozis had completed for a client's account.  The information concerning Producer Goods and Services was wrong.  Ms. Blozis stated that the client's portfolio contained 25.03% of this type of stock, but based on the graph it should have been approximately

- 7 -

6%. I asked her to correct this information. A true and complete copy of the Diversification form with my notes is attached hereto as **Exhibit 16**.

**Ms. Blozis is Given a Final Written Warning**

22.     Although Mr. Kochis recommended Ms. Blozis' immediate termination, after further discussion among Mr. Kochis, Mr. Gilmore, Ms. Thomas, and me, it was decided to remain with our April 30 decision to place Ms. Blozis on a Final Written Warning, which I delivered to her on May 19, 2003. Prior to meeting with Ms. Blozis, I met with Ms. Thomas who offered the following observations about Ms. Blozis: (1) Ms. Thomas detected a strong resistance to change on the part of Ms. Blozis; (2) Ms. Blozis said that she didn't have time to complete all of her work; (3) Ms. Blozis stated that she might not want to continue working at this level. A true and complete copy of the notes of my meeting with Ms. Thomas is attached hereto as **Exhibit 17**.

23.     On May 19, 2003, I met with Ms. Blozis to deliver the Final Written Warning and made notes of the meeting. During the meeting, Ms. Blozis asked if we could just fire her or if she resigned whether she could get unemployment. She expressed frustration and stated, among other things, that she was not willing to work fifty hours when she was getting paid 37.5 hours. A true and complete copy of the notes that I took at the May 19 meeting are attached hereto as **Exhibit 18**.

24.     During my meeting with Ms. Blozis, I stated, among other things, that the Portfolio Administrator position was changing and becoming more fast paced. I told Ms. Blozis that she had to do more with less. I also described examples of performance issues which had triggered her receipt of a Final Written Warning. A true and complete copy of my notes is attached hereto as **Exhibit 19**.

- 8 -

25.    On May 21, 2003 Ms. Blozis gave me her "to do" list.  One of the items that was on her list was to finish the May stale pricing sheet by June 20, 2003.  However, Ms. Blozis failed to complete the May 2003 stale price report by June 20, 2003.  True and complete copies of Ms. Blozis' To Do List and an e-mail exchange between Ms. Blozis and me with my notes are attached hereto as **Exhibit 20**.

**The Decision Is Made To Terminate Ms. Blozis' Employment**

26.    In addition to missing deadlines, Ms. Blozis continued to fail to understand the information that she was required to obtain for clients, although she had received assistance from Cindy Chambliss, a Portfolio Officer in the Philadelphia office.  On or about July 10, 2003, the decision was made to terminate Ms. Blozis' employment.  A true and complete copy of my July 10 e-mail to Mr. Gilmore is attached hereto as **Exhibit 21**.

27.    I met with Ms. Blozis on July 14, 2003 and Ms. Thomas was present by telephone.  Ms. Blozis' employment was terminated because she failed to show immediate and sustained improvement in her performance as was set forth in the Final Written Warning from May.  A true and complete copy of my notes concerning the termination meeting are attached as **Exhibit 22**.

**Other Portfolio Administrators That I Have Supervised**

28.    I also supervised Maria Dunlop, who held the position of Portfolio Administrator.  Ms. Dunlop was never placed on corrective action.  She was overall a good employee and she never had performance issues like Ms. Blozis had.

29.    I also supervised Laura Shannon, who was hired after Ms. Blozis' employment was terminated and held the position of Portfolio Administrator.  Ms.

- 9 -

Shannon was never placed on corrective action.  She was overall a good employee and she never had performance issues like Ms. Blozis had.

      30.    I have never made any inappropriate age-related or sex-related comments to any employees inclusive of Ms. Blozis.

- 10 -

Pursuant to 28 U.S.C. §1746, I certify under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true and correct. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Gregg L. Landis

Dated: February 26, 2007

- 11 -

PRCLIB-436194.1-SWILSON 2/26/07 8:35 AM

A-287

# EXHIBIT 1
# To
# EXHIBIT H

MEL/BLOZ 603

# INVESTMENT REVIEW
### Accounts 1083▮▮▮001 and 108▮▮▮600
### December 31, 2002

*problems
GL found
1/30/03*

*tax efficient*

**Portfolio Objectives**
Balanced approach which combines equities for long-term growth and bonds for current income and account stability.
Long-term investment horizon.

**Current Strategy**
Large Cap: tax exempt diversified stock model and mutual funds
Mid Cap, International and Emerging: mutual funds.
Fixed Income: mutual funds.

**Historical Market Values**

|  | 12/31/1998 | 12/31/1999 | 12/31/2000 | 12/31/2001 | 12/31/2002 |
|---|---|---|---|---|---|
| Act. No. 108▮▮▮001 | $ 557,906 | $ 5,328,706 | $ 3,476,664 | $ 3,232,459 | $ 2,885,273 |
| Act. No. 108▮▮▮600 | | $ 2,228,784 | $ 2,193,421 | $ 2,062,429 | $ 1,726,282 |
| **Total** | $ 557,906 | $ 7,557,490 | $ 5,670,085 | $ 5,294,888 | $ 4,611,555 |

**Asset Class Time-Weighted Rates of Return through period ending 12/31/02**

|  | 4th Quarter thru 12/31/02 | One Year thru 12/31/02 | Annualized 3 Year | Annualized 5 Year |
|---|---|---|---|---|
| **108▮▮▮001** | | | | |
| Total Account | 2.51% | -9.06% | -5.40% | 0.59% |
| Equities | 6.53% | -23.33% | -14.77% | -3.87% |
| Bonds | -0.29% | 7.78% | 7.39% | |
| **108▮▮▮600** | | | | |
| Total Account | 4.19% | -16.30% | -8.29% | |
| Equities | 4.25% | -16.51% | -8.56% | |
| S&P 500 Large Cap Index | 8.43% | -22.09% | -14.54% | 0.58% |
| S&P 400 Mid Cap Index | 5.83% | -14.52% | -0.05% | 6.41% |
| S&P 600 Small Cap Index | 4.91% | -14.63% | 0.56% | 2.44% |
| MSCI EAFE Index | 6.45% | -15.94% | -17.24% | -2.89% |
| MSCI Emerging Free | 10.04% | -6.00% | -13.97% | -4.58% |
| Lehman Brothers Aggregate | 1.57% | 10.25% | 10.10% | 7.53% |

*This is a taxable index. He has muni bond fund in trust. Needs a tax-free index or benchmark*

A-288

# EXHIBIT 2

# To

# EXHIBIT H

**Agenda for Meeting**
**With**
████████, Jr.

January 31, 2003

 I. Review of Current Holdings and Asset Allocation Exposures

    A. Mellon holdings
    B. Outside holdings

 I. Recommendations for Maximizing After-Tax Effects

    A. Capital Gains effects
    B. Income Tax Effects
    C. Asset Positioning

 I. Timing of Execution

    A. Short-term gains
    B. Long-term gains
    C. 2003/2004

 I. Discuss Overall Relationship

*This was e-mailed to Linda for printing. All of the topics defaulted to "1" instead of 1, 2, 3, 4. BB caught this and re-printed himself.     1/31/03*

A-289

MEL BLOZ 608

# EXHIBIT 3
# To
# EXHIBIT H

*I'm here on Sunday. when is her commitment?*

## Landis Gregg L

**From:**      Landis Gregg L
**Sent:**      Sunday, February 23, 2003 3:59 PM
**To:**        Blozis Linda J
**Subject:**   RE: ▇▇▇▇ family relationship

Can you look into this while I am away, and discuss when I get back?  Thanks.

-----Original Message-----
**From:**      Landis Gregg L
**Sent:**      Wednesday, February 05, 2003 7:32 PM
**To:**        Blozis Linda J
**Subject:**   FW: ▇▇▇▇ family relationship

*Asked for on 2/5
Still not done 2/23.
DONE 2/27.*

Linda:

Make the sales in #1 and #2 below.  Give me a recommendation of new funds to invest in.  Follow recommended
asset allocation guidelines.  We'll do the buys once we agree what to buy.

Pull Bill's last letter in #3 and adapt for current portfolio and my signature.  Discuss our duty as fiduciary to diversify
and get into other asset classes.  I can look at this in a few days.  Thanks.

-----Original Message-----
**From:**      Becker William S
**Sent:**      Tuesday, February 04, 2003 7:51 PM
**To:**        Landis Gregg L
**Subject:**   RE: ▇▇▇▇ family relationship

1.  Yes - sell remaining stock and reinvest in funds
2.    Yes - sell remaining stock and reinvest in funds
3.  Yes - send a letter recommending a systematic reduction in the over-weights with reinvestment into other
    asset classes.  If he is well enough, I expect he will strongly oppose with either a call or a letter.  I need to be
    out of the loop on the follow-up, so I can't get involved in this to any great extent, especially not a meeting.  I'm
    sure he'd love to take you to the fancy Wilmington Club one Friday for popovers.

-----Original Message-----
**From:**      Blozis Linda J
**Sent:**      Monday, February 03, 2003 4:16 PM
**To:** Becker William S
**Cc:** Landis Gregg L
**Subject:**      ▇▇▇▇ family relationship

We are proceeding in this matter.  Before doing a full-fledged family agreement, 3 items need to be addressed.
Pls advise.  Thx.

1.  #68▇▇▇▇ ▇▇▇▇ MLL      Mellon is sole tttee; we reduced hldgs of  XOM and DD last yr.
    Can we sell the 100 shs of each remaining?  There will only be a gain of @ $7K.

2.  #68▇▇▇▇ ▇▇▇▇ F/ITL      Mellon is sole ttee; 200 shs of DD and 300 of Wyeth remain with
    a gain of  @$17K.  We'd like to sell the rest?

3.  68▇▇▇▇ H▇▇▇▇ Sr f/ H▇▇▇▇ Mellon is co-with ▇▇▇.; we'd like to recommend to ▇▇ to reduce the
    over 10% of Coke; GE; JNJ and Pfizer in acct.  Do you know if he's strongly opposed
    and if so, we'd like him to sign a letter directing us to retain these positions despite Mellon's
    recommendation to diversify.  Might this take another meeting with him?

1

MEL/BLOZ 648