## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|   |   |   |
|---|---|---|
| **LINDA J. BLOZIS** | : | **CIVIL ACTION NO. 05-891 (SLR)** |
| **Plaintiff,** | : | |
| **vs.** | : | |
| **MELLON TRUST OF DELAWARE, NATIONAL ASSOCIATION; MELLON BANK, NATIONAL ASSOCIATION; MELLON FINANCIAL CORPORATION,** | : : : | |
| **Defendants.** | : | |
|   | : | |

## DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT
## OF THEIR MOTION FOR SUMMARY JUDGMENT

REED SMITH LLP

Thad J. Bracegirdle (No. 3691)
1201 Market Street, Suite 1500
Wilmington, Delaware 19801
(302)778-7500

John Unkovic (admitted *pro hac vice*)
435 Sixth Avenue
Pittsburgh, PA 15219
(412) 288-3131

Stephanie Wilson (admitted *pro hac vice*)
Sherri A. Affrunti (admitted *pro hac vice*)
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, NJ 08540
(609) 987-0050

Attorneys for Defendants, Mellon
Trust of Delaware National Association,
Mellon Bank, National Association
And Mellon Financial Corporation

Dated:  March 22, 2007

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

I.    ARGUMENT ............................................................................................... 2

    A.    COUNT IV OF PLAINTIFF'S COMPLAINT FOR RETALIATORY
        DISCHARGE MUST BE DISMISSED BECAUSE SHE CANNOT
        ESTABLISH A PRIMA FACIE CASE OR THAT THE TERMINATION OF
        HER EMPLOYMENT FOR PERFORMANCE REASONS WAS A
        PRETEXT .................................................................................................... 2

        1.    Plaintiff Cannot Establish A Prima Facie Case That Her
            Placement On Final Written Warning Was Retaliatory Because
            The Decision to Issue Plaintiff A Final Written Warning Was First
            Made On April 30 and Preceded Her May 1 Complaint ........................... 3

        2.    Plaintiff Has Failed To Establish A Prima Cause of Action For
            Retaliatory Discharge ........................................................................... 4

        3.    Plaintiff Has Failed To Establish A Prima Cause Of Action
            Through Antagonism ............................................................................. 5

            a.    Plaintiff's Allegation That Gilmore Was Not Nice To Her
                Does Not Establish Antagonism or Pretext ................................... 5

            b.    Defendants Followed Their Corrective Action Policy.................... 6

            c.    Plaintiff Cannot Rebut Defendants' Legitimate Reasons
                For The Termination of Her Employment ....................................... 9

    B.    PLAINTIFF HAS FAILED TO CARRY HER BURDEN OF SHOWING
        THAT HER TERMINATION FOR PERFORMANCE WAS A PRETEXT
        FOR AGE AND SEX DISCRIMINATION.............................................. 9

        1.    Plaintiff's Age Discrimination Claim Must Be Dismissed ........................... 9

            a.    Plaintiff Cannot Create Pretext By Describing Her
                Performance as Unblemished........................................................ 9

            b.    Gilmore's Alleged One Time Use Of The Term Survivor
                Does Not Create Pretext............................................................... 11

            c.    Gilmore Never Used The Term "Younger" ................................... 11

            d.    Plaintiff Was Not Singled Out And Denied Assistance ............... 11

            e.    Plaintiff Was Not Denied A Bonus For Discriminatory
                Reasons ...................................................................................... 13

            f.    Plaintiff Was Not Denied Vacation .............................................. 13

g.    Plaintiff's Conspiracy Theory Fails ................................................ 14

h.    Plaintiff's Disagreement With Defendants' Assessment Of
Her Work Cannot Create Pretext ................................................ 15

i.    Plaintiff's Excuses For Failure To Perform Her Work Does
Not Create Pretext ....................................................................... 16

j.    Dunlop's Speculative Testimony Does Not Create Pretext ......... 17

2.    Plaintiff's Sex Discrimination Claim Must Be Dismissed ......................... 17

CONCLUSION .......................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Anderson v. Stauffer,
965 F.2d 397 (7th Cir. 1992) ................................................................16

Bailey v. Commerce National Insurance Services, Inc.,
Civ. No. 05-183-SLR, 2007 U.S. Dist. LEXIS 10094 (D. Del. Feb. 13, 2007)..................4, 5, 9

Barnes v. Southwest Forest Indus., Inc.,
814 F.2d 607 (11th Cir. 1987) ................................................................15

Billet v. Cigna Corp.,
940 F.2d 812 (3d Cir. 1991) ................................................................15

Burlington Northern & Santa Fe Railway Co. v. White,
126 S.Ct. 2405 (2006)................................................................5

Burton v. MBNA America Bank,
Civ. Act. No. 03-915-GMS, 2005 U.S. Dist. LEXIS 12154 (D. Del. June 22, 2005)..................4

Dungee v. Northeast Foods, Inc.,
940 F. Supp. 682 (D.N.J. 1996) ................................................................16

EEOC v. MCI Inter. Inc.,
829 F.Supp. 1438 (D.N.J. 1993) ................................................................16

EEOC v. Rite Aid,
Civ. Act. 03-CV-777-GMS, 2005 U.S. Dist., LEXIS 32898 (D. Del. Dec. 12, 2005)..................7

Ezold v. Wolf, Block, Schorr & Solis-Cohen,
983 F.2d 509 (3d Cir. 1992) ................................................................10, 16

Foxworth v. Pennsylvania State Police,
Civ. No. 05-5571, 207 U.S. App. LEXIS 2230 (3d.Cir. Feb. 1, 2007)...................18

Fuentes v. Perski,
32 F.3d 759 (3d Cir. 1994) ................................................................7

Healey v. New York Life Inc. Co.,
860 F.2d 1209 (3d Cir. 1988) ................................................................15

Jimoh v. Ernst & Young,
908 F. Supp. 220 (S.D.N.Y. 1995) ................................................................16

Maidenbaum v. Bally's Park Place,
870 F. Supp. 1254 (D.N.J. 1994), aff'd, 67 F.3d 291 (3d Cir. 1995) ....................16

Morrissey v. Luzerne County Community College,
117 Fed. Appx. 809 (3d.Cir. 2004) ................................................................4, 9

Sirvidas v. Commonwealth Edison Co.,
   60 F.3d 375 (7th Cir. 1995) ............................................................................16

Stern v. Trustees of Columbia University,
   903 F. Supp. 601 (S.D.N.Y. 1995) ...................................................................16

**Statutes**

29 U.S.C. §§ 621-634, Age Discrimination in Employment Act, ADEA.................................1, 15

42 U.S.C. § 2000e, Title VII, Civil Rights Act of 1964 ...................................................................1

## INTRODUCTION

Plaintiff's Answering Brief confirms Defendants' position that her four Count Complaint must be dismissed in its entirety with prejudice.  Count I of Plaintiff's Complaint alleges a violation of the ADEA and state law, but Plaintiff fails to show that the termination of her employment for performance was pretextual, particularly where she fails to show that younger similarly situated Portfolio Administrators on the Gilmore Team were treated better.  Count II of Plaintiff's Complaint alleges a hostile work environment based on age in violation of the ADEA and state law; however, Plaintiff did not even brief this claim in her Answering Brief and has, therefore, abandoned it.  Similarly, Count III of Plaintiff's Complaint alleges a hostile work environment claim based on sex in violation of Title VII and state law.  However, like her age harassment claim, Plaintiff has abandoned this claim by failing to brief it and has, instead, morphed her allegations into a disparate treatment claim based on sex.  Her reconstructed sex discrimination claim fares no better because Plaintiff cannot establish pretext and cannot point to any similarly situated male Portfolio Administrators who received more favorable treatment. Plaintiff rounds out her complaint by alleging in Count IV that her discharge stemmed from her May 1, 2003 internal complaint.  However, this claim fails also because, among other things, Plaintiff cannot show pretext.

What becomes evident by just a cursory review of Plaintiff's Answering Brief is that Plaintiff seeks to withstand Defendants' summary judgment motion by mischaracterizing deposition testimony and distorting the record.  However, these tactics fall flat as the record evidence, based principally on Plaintiff's own deposition testimony, confirms that summary judgment is warranted in this case.  Plaintiff was not subjected to age or sex discrimination or retaliatorily discharged.  Her employment was terminated for performance deficiencies. Although Plaintiff seeks to ignore her performance problems or excuse them away, the record is replete with examples of these deficiencies that preceded and triggered her Initial Written Warning in February 2003; these deficiencies continued after her receipt of the Initial Written

Warning and resulted in her receipt of a Final Written Warning three months later in May. Plaintiff's employment was terminated in July 2003 – approximately five months after she was given the First Written Warning for continuing performance problems. Under these set of facts, Plaintiff simply cannot show any pretext.

When stripped of all of their irrelevancies, Plaintiff's arguments in opposing Defendants' legitimate nondiscriminatory and nonretaliatory reason for her termination are based on her own running disagreement with Defendants' assessment of her work; that Gilmore was mean to her; that Maria Dunlop received one more vacation day than Plaintiff around the May 2003 timeframe; that Dunlop received a bonus in 2003 for 2002 performance and Plaintiff, who was on corrective action, did not; and Mellon, based on no more than rank speculation and conjecture, engaged in a clandestine scheme to replace the older workers on the Gilmore Team with younger workers. None of these machinations defeat summary judgment. As Defendants have argued in their Moving Brief and below, summary judgment is both warranted and appropriate on all of the claims asserted in the Complaint.

## I. ARGUMENT

### A. COUNT IV OF PLAINTIFF'S COMPLAINT FOR RETALIATORY DISCHARGE MUST BE DISMISSED BECAUSE SHE CANNOT ESTABLISH A PRIMA FACIE CASE OR THAT THE TERMINATION OF HER EMPLOYMENT FOR PERFORMANCE REASONS WAS A PRETEXT

Plaintiff argues that her receipt of the Final Written Warning on May 19, 2003 and the termination of her employment on July 19, 2003 all stemmed from her May 1 internal age discrimination complaint. However, Plaintiff fails to establish a prima facie cause of action for retaliation or to show that her placement on Final Written Warning or the termination of her employment was a pretext for retaliation.

1.    Plaintiff Cannot Establish A Prima Facie Case That Her Placement On Final Written Warning Was Retaliatory Because The Decision to Issue Plaintiff A Final Written Warning Was First Made On April 30 and Preceded Her May 1 Complaint

The decision to place Plaintiff on Final Written Warning was first made on April 30, one day prior to Plaintiff's May 1 complaint to Rosemary Thomas.  As such, Plaintiff cannot argue credibly that her complaint triggered the Final Written Warning.  The Declarations of Thomas along with Thomas' April 30 notes and Landis' Declarations establish this.  (Thomas Decl., Exh. C at ¶ 10, A-40; Exh. 2 to Ex. C at A-69; Landis Decl., Exh. H at ¶ 15 at A-281-282; Exh. 11 to Exh. H at A-306).  Specifically, Landis' notes concerning a April 30, 2003 meeting between himself, Thomas, and Gilmore state clearly: "Brendan called Rosemary and they will place Linda on final written warning."  (A-304).  This is consistent with Thomas' Declaration and notes that state that the decision to place Plaintiff on Final Written Warning was made on April 30.  ( See A-69).

In the wake of the uncontroverted record evidence that it was first decided that Plaintiff would be placed on Final Written Warning on April 30, Plaintiff, having never asked this specific question of any of the defense witnesses at their deposition, seeks to push the timeline beyond April 30 by unilaterally labeling Landis' Declaration as a "sham" by pointing to his subsequent notes that describe ongoing discussions about the appropriate personnel steps for Plaintiff.  As an example, Landis' May 9 email addressed to Gilmore and others state: "I understand you will be placing Linda on Final Written Warning next week, and will be asking Rosemary to help in the communication of this decision." In response to Landis' May 9 e-mail, on the same day, Paul Kochis, Gilmore's supervisor wanted to terminate Plaintiff's employment immediately for insubordination, see B-925 – 926, and further discussions on the issue were held.  Illustrative of the further discussions are Landis' May 12 notes concerning his discussions with Thomas that state, in part, "we decided to place Linda on Final Written Warning."  (B930).  Plaintiff selectively hones in on Landis's May 9 and May 12 notes while completely ignoring his earlier April 30

notes on this issue that state that the decision was made on April 30 to place Plaintiff on Final

Written Warning.  Accordingly, contrary to Plaintiff's self-styled arguments, Defendants have not

submitted "sham" Declarations or contradicted prior deposition testimony.

Even if this Court were to apply the later May 9 or May 12 dates, Plaintiff's Answering

Brief ignores the well-established law that temporal proximity alone is insufficient to establish

causation without a showing that the timing is "unusually suggestive" of retaliatory motive.

Morrissey v. Luzerne County Community College, 117 Fed. Appx. 809, 816 (3d.Cir. 2004);

Burton v. MBNA America Bank, Civ. Act. No. 03-915-GMS, 2005 U.S. Dist. LEXIS 12154, at

*15-16 (D. Del. June 22, 2005).  Here, Plaintiff cannot satisfy this stringent requirement.  The

record shows that she was aware since, at the latest, February 2003 that subsequent

performance issues could result in further corrective action and she readily admits that on April

30, she had not completed the client books.  (Defendants' Moving Brief at 8-13).

   2.  Plaintiff Has Failed To Establish A Prima Cause of Action For Retaliatory
      Discharge

Plaintiff lodged an internal complaint on May 1 and her employment was eventually

terminated more than two months later on July 19.  Here, Plaintiff has failed to produce

evidence of a causal link between her protected activity and the termination of her employment.

This Court, under analogous facts, has confirmed Defendants' position in Bailey v. Commerce

National Insurance Services, Inc., Civ. No. 05-183-SLR, 2007 U.S. Dist. LEXIS 10094 (D. Del.

Feb. 13, 2007).  In Bailey, this Court, in language equally applicable here, held that "when

utilizing the shorter eight-week period to measure temporal proximity. . . the length of time

between the end of the investigation and defendant's decision to fire plaintiff is not unusually

suggestive of retaliatory motive." Bailey, 2007 U.S. Dist. LEXIS 10094, at *18-19.  The same

result should occur here.

3.    Plaintiff Has Failed To Establish A Prima Cause Of Action Through Antagonism

Mindful that the more than two month interval between her complaint and eventual termination of employment erases any indicia of retaliatory conduct under Bailey, Plaintiff seeks to create a pattern of antagonism following her complaint of age discrimination where there is none.  In addition to her failed "sham" Declaration theory, Plaintiff argues that a pattern of antagonism (and pretext) is shown because 1) "Gilmore wasn't nice to Plaintiff" and 2) Defendants violated their progressive discipline policy. (Answering Brief at 13-15).  None of these arguments establish a pattern of antagonism or pretext.

a.    Plaintiff's Allegation That Gilmore Was Not Nice To Her Does Not Establish Antagonism or Pretext

Ignoring the well-established law, that the discrimination statutes were never meant to be a general civility code for the American workplace, Burlington Northern & Santa Fe Railway Co. v. White, 126 S.Ct. 2405, 2415 (2006), Plaintiff doggedly argues that antagonism and pretext are shown because Gilmore "wasn't nice" to her.  (Opp. Brief. at 13).  In support of this vain attempt, she argues that he yelled and cursed at her on one occasion on April 30.  However, Plaintiff's own testimony simultaneously erases any retaliatory motive for this conduct by conceding that he exhibited the same behavior toward male and female members of his team, including Becker.  (Defendants' Moving Brf. at 11, 31-32).

Next, she argues that Gilmore's retaliatory motives are shown by Dunlop's sole testimony that he crumpled a paper sign that Plaintiff had on her desk that said "Gone South." According to Plaintiff, Gilmore did this after she "fil[ed] the age discrimination complaint against him" (Answering Brf. at 13).  Even if this alleged crumpling of a piece of paper could constitute antagonism or pretext, which it cannot as a matter of law, Burlington Northern, 126 S.Ct. at 2415, reference to this alleged incident cannot create antagonism or pretext because of a number of other reasons.  First, it occurred in 2002, and Plaintiff is precluded from relying on this alleged incident because it is time-barred.  (Dunlop Dep. Tr. at 56:19-57:11; B555-B556).

- 5 -

(See Defendants' Moving Brief at 27 n. 13).  Second, Gilmore supposedly crumpled the piece of paper in 2002 (Dunlop Dep. Tr. at 56:19-57:11; B555-B556), one year prior to Plaintiff's 2003 internal complaint.  Independent of the legal infirmities of relying on the 2002 example, Dunlop's testimony does not support her retaliatory discharge claim (or other discrimination claims) where Dunlop testified that she never heard Gilmore make any anti-age comments to Plaintiff.  Id.

### b.    Defendants Followed Their Corrective Action Policy

Having shown that Gilmore's alleged crumpling of a piece of paper in 2002 cannot establish antagonism or pretext in connection with her retaliatory discharge claims (or any of her claims), Plaintiff next takes the ill-fated tack of making the convoluted argument that antagonism and pretext are shown because Defendants did not properly place her on corrective action in February 2003, 3 months prior to her placement on Final Written Warning on May 19, 2003, and as a result, the May 19 Final Written and subsequent termination of her employment two months later in July 2003 was flawed procedurally.

The record evidence shows otherwise.  Plaintiff argues that the 2002 performance review where she received an overall rating of Action Needed did not constitute an Initial Written Warning.  Plaintiff essentially argues that corrective action can only be triggered by a separate piece of paper that is entitled "Initial Written Warning" and cannot be included in a performance evaluation.  Plaintiff advances this argument even though she admitted in her deposition that she was aware after receipt of her 2002 evaluation that further corrective action would follow if her performance did not improve (Defendants' Moving Brf. at 9-10).  However, even more fatal to her claim is her failure to point to other instances where the policy was applied differently.  Despite these infirmities, Plaintiff doggedly persists with this argument, although her self-styled interpretation of the policy directly contradicts the explicit terms of Mellon's corrective policy and Thomas' interpretation of the policy.

Indeed, despite Plaintiff's insistence that Defendants did not follow their corrective action policy, conspicuously absent from her brief is any direct reference to the policy's terms that were

supposedly violated.  Instead Plaintiff prefers to rely on her own conclusory statements and that of Dunlop, who admitted that she was in essence only speculating as to the policy's terms and did not know if it violated Mellon's policy to include the initial written warning on a performance evaluation (Dunlop Dep. Tr. at 49:9-51:4; B548-B550).

The relevant portions of the policy confirm that no violation occurred.  Specifically, the policy, in pertinent part, states: "This corrective action policy is not an express or implied employment contract and does not create any contractual rights or promises concerning employment."  (A-84).  Under the category entitled, "Initial Written Warning," it states that the "manager conducts a documented performance or unprofessional conduct discussion with the employee . . ."; "the manager must clearly communicate to the employee that failure to improve may result in further corrective action; and copy of the documentation must be given to the employee."  (A-89).  By its terms, the 2002 performance evaluation satisfies these criteria.  (See A-342-A-350).

No where does the policy state that the Initial Written Warning cannot be contained in the performance evaluation or that the Initial Written Warning must be a separate document and Plaintiff cannot create pretext by simply disagreeing with the policy's terms or Defendants' interpretation of the policy.  Fuentes v. Perski, 32 F.3d 759 (3d Cir. 1994).  See also, EEOC v. Rite Aid, Civ. Act. 03-CV-777-GMS, 2005 U.S. Dist., LEXIS 32898 at *15-16 (D. Del. Dec. 12, 2005) (failure to follow progressive discipline policy did not establish pretext.)

Thomas' interpretation of the policy is consistent with the policy's terms (A-39 – 40), although Plaintiff in her Answering Brf. at 14 seeks to leave the impression that Thomas testified that Defendants "never issued an Initial Written Warning" at all by mischaracterizing the record. A review of Thomas' deposition transcript readily reveals that Plaintiff was not asking about whether an Initial Written Warning ever had been issued to Plaintiff, but was asking about the issuance of the Final Written Warning as a result of the April 30 meeting between Gilmore and Plaintiff (B648 – B 649).  When Plaintiff asked Thomas about the issuance of the Initial Written

Warning, Thomas testified that it was contained in Plaintiff's performance evaluation.  (Thomas Dep. Tr., 80:15-81:1; B660 – B661).

Not content to mischaracterize Thomas' deposition, Plaintiff proceeds to mischaracterize Dunlop's testimony in order to supplement her own irrelevant suppositions about the policy's interpretation with that of Dunlop.  At page 30 of her Answering Brf., Plaintiff refers disingenuously only to Dunlop's deposition testimony on direct examination and ignores Dunlop's admissions on cross examination that she never supervised Plaintiff; never evaluated her performance; never had any input into her corrective action; never administered the corrective action policy; was never on corrective action herself; and was basing her testimony concerning the corrective process on nothing more than her "thought."  (Dunlop Dep. Tr. 49:9-50:11; B-548 – B-549).

Plaintiff rounds out her pattern of mischaracterization by distorting Gilmore's testimony as supportive of her argument that an Initial Written Warning cannot be contained in a performance evaluation.  However, a review of Gilmore's deposition testimony cited by Plaintiff in her Answering Brf. at 30 readily reveals that he was never asked the specific question of whether the Initial Written Warning could be included in the performance evaluation and was testifying about the corrective action process in a general manner.  Although, by mischaracterizing Gilmore's testimony, Plaintiff seeks to spin Gilmore's testimony in her favor, Plaintiff's reference to his testimony actually supports Defendants' position because Plaintiff was given remedial assistance and numerous chances to improve her performance prior to the termination of her employment.

    c.    **Plaintiff Cannot Rebut Defendants' Legitimate Reasons For The Termination of Her Employment**

Even if Plaintiff were able to establish causation and, thereby, make a prima facie case of retaliation, she remains unable to adequately rebut the legitimate reasons Defendants have set forth to explain their decision to terminate her employment.  See Defendants' Moving Brf. at 38.  See also, Morrissey, 117 Fed. Appx. at 816-817 (summary judgment granted where no pretext was shown); Bailey, 2007 U.S. Dist. LEXIS 10094, at *23-26 (same).  As such, Plaintiff's retaliation count must be dismissed with prejudice.

**B. PLAINTIFF HAS FAILED TO CARRY HER BURDEN OF SHOWING THAT HER TERMINATION FOR PERFORMANCE WAS A PRETEXT FOR AGE AND SEX DISCRIMINATION**

Assuming for the sake of argument that Plaintiff has satisfied the rudimentary elements of creating a prima facie case of age and sex discrimination, that is not the end of the analysis as Plaintiff would like this Court to believe.  Against the time-honored principle that termination for performance reasons is a legitimate nondiscriminatory reason for termination (Defendants' Moving Brf. at 24), Plaintiff must show that Defendants' reason for terminating her employment for performance is a pretext for discrimination.  While Defendants have more than satisfied their burden of articulating legitimate non-discriminatory reasons for the termination of her employment, Plaintiff has not come even close to showing pretext as she must do in order to withstand Defendants' motion for summary judgment.

    1.    Plaintiff's Age Discrimination Claim Must Be Dismissed.

    a.    **Plaintiff Cannot Create Pretext By Describing Her Performance as Unblemished**

Throughout Plaintiff's Answering Brief, she describes herself as a thirteen year employee with an unblemished record (see e.g., Answering Brf. at 4).  Although Plaintiff's ploy is to doubtlessly bolster her deficient performance record, it is misleading.  Plaintiff held the position of Portfolio Administrator for only approximately 4 of the 13 years that she was employed by Defendants and as the record shows definitively, those 4 years were far from

"unblemished."  (See, e.g., Thomas Decl., Exh. C at ¶ 5; A-38; Becker Decl. Exh. D; A-107 – A014; Landis Decl. Exh. H; A-277 – A-316).

In support of her "unblemished" performance theory, Plaintiff argues disingenuously that Becker "never tried to fire Plaintiff or even recommended her discharge" (Answering Brf. at 5). Although this is technically true, it ignores the fact that Becker recommended initiation of the corrective action process after years of frustration over doing Plaintiff's job.  Next, she refers with surgical precision only to categories of her 2002 evaluation where Becker did not rate her as a Needs Improvement to the exclusion of the categories where she was rated Needs Improvement which lead to her overall Action Needed rating.  Unfortunately, for Plaintiff she cannot "pick and chose" among the categories of the evaluation where she was not rated as a Needs Improvement to the exclusion of the other sections.  This type of cherry-picking process has been foreclosed by the Third Circuit.  Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 528 (3d Cir. 1992) ("Pretext is not established by virtue of the fact that an employee has received some favorable comments in some categories or has, in the past, received some good evaluations").[1]  Consequently, the critical inquiry at the pretext stage is not whether Plaintiff can conjure up some positive comments about her performance generally, but whether she can challenge as untrue the specific deficiencies relied upon by Defendants in terminating of her employment.  Because Plaintiff has failed to concentrate on this focused issue, her efforts are unavailing.

---

[1]     Plaintiff's references to a "commendation" that she received from a Mellon internal client, who was not her supervisor, referencing both her and Dunlop's work and her work on Mellon's Innovation Council do not under Ezold establish pretext.  (See Answering Brf. at 5-6 and n.8).

**b.     Gilmore's Alleged One Time Use Of The Term Survivor Does Not Create Pretext**

Armed with no more than her own speculation, Plaintiff's next tack is to argue that Gilmore's one-time reference to her on April 30 as a "survivor" is a "code word" for age bias (Answering Brf. at 28).  Plaintiff is wrong.  Neither the case law that Plaintiff cites in her Answering Brief at 28 n.2 nor the facts support Plaintiff's contention.  Although Gilmore denies ever calling Plaintiff a survivor (Gilmore Dep. Tr. at 31:5-8; B-452), the uncontradicted record establishes that Plaintiff was not the only "survivor" on Gilmore's team.  In addition to Gilmore, Holmquist, Chambliss and Marano (younger members of the Gilmore Team) were also survivors.  (Defendants' Moving Brf. at 12, 30).  As Defendants have argued in their Moving Brief, this one time statement does not create pretext.

**c.     Gilmore Never Used The Term "Younger"**

Plaintiff next argues that pretext is shown because Gilmore said that "younger" members of his team were more productive.  (Answering Brf. at 7).  However, Plaintiff's own deposition testimony shows otherwise.  There, she testified specifically that Gilmore <u>never</u> used the term "younger" or referred to her age while she was employed.  (Defendants' Moving Brf. at 12).  As Defendants have shown in their Moving Brief, equally unavailing is Plaintiff's argument that Gilmore exhibited age discrimination by being more complimentary to Dunlop than Plaintiff. (<u>See</u> Defendants' Moving Brf. at 30).

**d.     Plaintiff Was Not Singled Out And Denied Assistance**

As part of her ever moving argument, Plaintiff argues that Gilmore "singled" her out because he would not allow Dunlop to assist her, although Plaintiff assisted Dunlop.  This argument fares no better than her other ones.  As has often been the case with Plaintiff's Answering Brief, she begins her argument by mischaracterizing deposition testimony.  Here, she selectively cites to the first sentence of Landis' deposition testimony that relates to teamwork and then seeks to argue that Defendants had a "policy" of teamwork that was

violated. As with previous instances, her referenced cite ignores the second sentence that completed Landis' answer. Landis testified that in addition to teamwork, "Mellon believes it is the duty of an individual to complete most of his or her tasks with little help so that each of us focuses on the job that's assigned to us." (Landis Dep. at 70:15-22; B755).

Contrary to what Plaintiff would have this Court believe, there was no "policy" of teamwork that was violated and no blanket prohibition against Plaintiff seeking help from Dunlop. According to Plaintiff's own testimony, Dunlop had helped Plaintiff with her work in the past, but around the April or May 2003 timeframe Gilmore told Plaintiff that she could not seek Dunlop's help in completing the client booklets. (Blozis Dep. Tr., 297:8-299:14; B347 – B349). Yet Plaintiff concedes that despite Gilmore's instructions, Plaintiff still accepted assistance from Dunlop in completing her projects. (Blozis Dep. Tr., 299:16-23; B-341; Dunlop Dep. Tr. 63:11-12; B-562).

Having continued to receive assistance from Dunlop after Gilmore instructed her against this, Plaintiff then argues that pretext is shown because Dunlop was not criticized for leaving 60 scholarship checks for Plaintiff to assemble (Answering Brf. at 23). Again, this contention is based on a gross distortion of the record. Plaintiff testified that when Dunlop (and not Gilmore, Becker, or Landis) asked her to complete the mailing she told Dunlop, "I'll be happy to do that" (Blozis Dep. Tr. 308:4-13; B-358) and never complained to Gilmore, Landis or Becker about completing the mailing. (Blozis Dep. Tr., 309:20-22; B-358).

According to Plaintiff, completing the mailings took "maybe an hour's plus worth of work" (Blozis Dep. Tr. 310:8-19 – B-360) at the most. However, most significant and damaging to her pretext theory is Plaintiff's own admission that she does not even know if Gilmore, Landis or Becker ever knew who completed the mailings. (Blozis Dep. Tr. 308:20-309:6; B358 – B359).

e.    **Plaintiff Was Not Denied A Bonus For Discriminatory Reasons**

Plaintiff's argument that she was denied a bonus in 2003 for 2002 performance because of her age also fails.  Plaintiff did not receive a bonus because she was on corrective action. (Defendants' Moving Brf. at 28, 32).[2]

f.    **Plaintiff Was Not Denied Vacation**

Next, Plaintiff claims erroneously that she was "singled out and denied vacation."  This is wrong.  While Plaintiff seeks to leave the impression that this was an ongoing event, it was not. The issue revolved around a single vacation request for time off in May 2003.  Plaintiff was not denied vacation; rather she was granted 6 days of vacation instead of the 10 days she requested because of business reasons.  While never addressing Defendants' business reasons for denying her the 4 extra days, Plaintiff claims this was an age discriminatory act because Dunlop received 7 days (one more day than Plaintiff) for her wedding and honeymoon.

In a vain attempt to prop up her legally infirmed argument of being "singled out" for "denial" of vacation, Plaintiff resorts yet again to distorting deposition testimony.  Plaintiff states that "amazingly [Gilmore] admits that 'the only time . . .' [he denied a vacation request] was with Linda Blozis on this occasion, that we ever had an issue about whether or not it was appropriate . . ."  (Answering Brf. at 25).  What is amazing is the gross mischaracterization of Gilmore's testimony.  Gilmore testified very clearly that the issue that had to be addressed was not whether to deny Plaintiff's vacation request, but whether it was an appropriate time for the request.  The following exchange is illustrative:

---

2    Plaintiff alleges that Holmquist, a Portfolio Manager and not a Portfolio Administrator, told her that he did not receive a bonus in 2003.  However, he did not tell her why and she never inquired with Gilmore, Becker or Landis.  (Blozis Dep. Tr., 354:2-22; B-403).

Q:      So were you active or passive in the determinations of who was granted or denied X amount of vacation days out of the Delaware office?

A:      I would say I had – I would say – I would say that I had little – there was very few times the issue ever came up.  I wouldn't describe myself as being active or passive at all.  That wasn't the case.

Q:      Very few times what issue came up?

A:      About whether or not – the only time it came up was with Linda Blozis on this occasion, that we ever had an issue about whether or not it was appropriate.

Q:      Whether or not it was appropriate to grant the individual vacation?

A:      For her to leave at the time she wanted to leave.  Not to be allowed to take vacation.

Q:      So was it a question of whether or not she should be allowed to take vacation starting on a specific date or whether or not she should be allowed to take vacation of a certain length?

A:      It was, I believe at the time had to do with the time she wanted to leave.

(Gilmore Dep. Tr. 47:6-48:2; B-468 – 469).

### g.      Plaintiff's Conspiracy Theory Fails

By merely tracking the allegations in her Complaint, Plaintiff's Answering Brief continues with the unsubstantiated and purely speculative arguments that there was a conspiracy to terminate the employment of older workers and hire younger ones to replace them.  However, as Defendants argued in their Moving Brief, Plaintiff's arguments that are based on nothing more than hearsay, speculation and time-barred examples cannot defeat summary judgment.  (Defendants' Moving Brief at 26-28).  Specifically as Defendants argued in their Moving Brief, all events allegedly occurring prior to July 13, 2003 are time-barred.  (Defendants' Moving Brief at 27 n. 3).  Here, Plaintiff relies on a parade of time-barred examples to support her conspiracy theory by arguing that Squier was given "unprofessional" criticisms in late 1990s and resigned in

- 14 -

1999; Agne was discharged in 2000 or 2001; Gilmore was assigned to the Delaware office in 1998; Landis was transferred in 1999; and Dunlop was hired in July 2002.

Notwithstanding Plaintiff's inappropriate reliance on time-barred examples, Courts have unhesitantly recognized that the mere hiring of a younger worker to replace an older one is not indicia of age discrimination. See Billet v. Cigna Corp., 940 F.2d 812, 827 (3d Cir. 1991) (*citing* Healey v. New York Life Inc. Co., 860 F.2d 1209, 1220 (3d Cir. 1988) ("A decision affecting an employee in the protected class does not become a discriminatory decision merely because made in the context of a reorganization, or because a younger employee has benefited by the decision."); see also, Barnes v. Southwest Forest Indus., Inc., 814 F.2d 607, 610 (11th Cir. 1987) ("[N]othing in the ADEA requires that younger employees be fired so that employees in the protected age group can be [retained]").

In support of her conspiracy theory, Plaintiff again surgically cuts and pastes deposition testimony to mischaracterize the record. Plaintiff would have this Court believe that Gilmore hired Dunlop because "she looked young." That is not what Gilmore testified. He testified that along with his manager – here Landis – he would interview potential candidates, inclusive of Dunlop. (Gilmore Dep. Tr. 21:15-22:12; B-442 – 443). He never testified that he hired Dunlop because she was young. In fact, as his deposition transcript shows, it was Plaintiff who initiated the age comparison by asking Gilmore whether there were any younger portfolio administrators who worked with Plaintiff.

### h. Plaintiff's Disagreement With Defendants' Assessment Of Her Work Cannot Create Pretext

Despite the clear statement in her 2002 performance review that "[Plaintiff] understands that the role of Portfolio Administrator is changing at Mellon, and that more will be expected of her in the future," (A-345) her own acknowledgement that the position had changed (Defendants' Moving Brf. at 8), and her documented performance deficiencies, Plaintiff seeks to establish pretext by disagreeing with Defendants' legitimate assessment of her work. However,

neither Plaintiff's self-styled disagreements over the quality of her work nor whether Defendants property assigned her certain projects, such as the stale price report, establish pretext. <u>Ezold</u>, 983 F.2d at 531-33; <u>Dungee v. Northeast Foods, Inc.</u>, 940 F. Supp. 682, 689 (D.N.J. 1996); <u>see also</u> <u>Jimoh v. Ernst & Young</u>, 908 F. Supp. 220, 226 (S.D.N.Y. 1995) (employee's disagreement with employer's business decision is insufficient to prove discriminating intent); <u>Maidenbaum v. Bally's Park Place</u>, 870 F. Supp. 1254, 1265 (D.N.J. 1994), <u>aff'd</u>, 67 F.3d 291 (3d Cir. 1995), ("There are likely to be very few business judgments the wisdom of which cannot, with hindsight, be challenged"; This does not prevent summary judgment); <u>Stern v. Trustees of Columbia University</u>, 903 F. Supp. 601, 604 (S.D.N.Y. 1995) (a court will "not sit as a super-personnel department that reexamines an entity's business decisions."). Moreover, pointing to prior performance evaluations from previous supervisors do not create pretext. <u>EEOC v. MCI Inter. Inc.</u>, 829 F.Supp. 1438, 1453 (D.N.J. 1993); <u>Sirvidas v. Commonwealth Edison Co.</u>, 60 F.3d 375, 378 (7th Cir. 1995) (general averments of adequate performance are insufficient to defeat summary judgment; plaintiff must specifically refute the facts which support employer's claim of deficient performance); <u>Anderson v. Stauffer</u>, 965 F.2d 397, 403 (7th Cir. 1992) (same). As Defendants have argued, this does not defeat their summary judgment motion.

### i.    **Plaintiff's Excuses For Failure To Perform Her Work Does Not Create Pretext**

Plaintiff next makes a series of excuses for her poor performance, none of which defeat summary judgment. One excuse is that she could not complete her projects in a timely manner because she had too much work and not enough time in a 37.5 work week to complete them. (Answering Brf. at 32). While Plaintiff scoffs at the notion of putting in as much time as Landis to complete work, (<u>Id.</u>), notably, Dunlop testifies that she, too, at times felt overwhelmed with the work, but worked late and weekends to complete projects on her own initiative (Dunlop Dep. Tr. 24:6-7; B – 523; 79:1-8; B518).

Plaintiff's next excuse is that she had no training to increase her knowledge (Answering Brf. at 33). However, as the record confirms, each document that Becker and Landis correct and returned to Plaintiff for finalization was a form of training. Moreover, Plaintiff admits that Chambliss provided training to her. (Blozis Dep. Tr. 164:8-166:13; B-214 – B – 216). In contrast, the younger Dunlop was not provided any training by Chambliss. (Dunlop Dep. Tr. 27:15-18; B – 526).

### j.    Dunlop's Speculative Testimony Does Not Create Pretext

Abandoning her excuses defense, Plaintiff next seeks to bolster her age claim by relying on Dunlop's perception that Gilmore and Becker were harder on Plaintiff than they were on her. (Answering. Brf. at 25). When asked specifically to explain the basis for her statement, Dunlop testified that it was her "opinion" and it was based on "vague memories." (Dunlop Dep. Tr. at 52:22-53:10; B-551 – B-552). In addition to her "vague memories," Dunlop testified, it was again her opinion, that Becker did not treat Plaintiff fairly because Plaintiff told her that Becker had given her "a bad review" (Dunlop Dep. Tr. 54:19-55:2; 55:18-21; B-553 – B-554), although Dunlop testified that she [Dunlop] deserved her favorable reviews. (Dunlop Dep. Tr. 55:23-56:3; B-554 – B 555). As to Gilmore, Dunlop recalled vaguely that he had made "comments" to Plaintiff, but could not remember what they were. (Dunlop Dep. Tr. 56:70-12; B-555). However, most significantly, Dunlop testified that neither Becker nor Gilmore had made any anti-age comments. (Dunlop Dep. Tr. 56:19-21; B-555; 55:10-12; B-554).

### 2.    Plaintiff's Sex Discrimination Claim Must Be Dismissed

Plaintiff also fails to show that her termination was a pretext for sex discrimination. In her Answering Brief, Plaintiff refers only to Merlino, a male Portfolio Administrator in the Philadelphia office, whom she describes as having performance problems. However, Plaintiff has offered no evidence of this beyond her own self assessment of Merlino's aptitude and hearsay statements from other co-workers that he did not pull his weight. Significantly, Plaintiff conceded that she did not even know if Gilmore or Becker were aware of Merlino's alleged

- 17 -

conduct.  As Defendants have argued, this cannot create pretext.  (Defendants' Moving Brf. at 18-19).  See also, Foxworth v. Pennsylvania State Police, Civ. No. 05-5571, 207 U.S. App. LEXIS 2230, at *17-19 (3d.Cir. Feb. 1, 2007), (summary judgment was appropriate on Title VIII claim where Plaintiff could not show that similarly situated persons were treated differently).

Having no more than rank speculation and hearsay to support her sex discrimination, Plaintiff again turns to Dunlop for so-called evidence that Gilmore treated men better than women (Answering Brief at 36).  However, on cross-examination Dunlop testified unequivocally that Gilmore did not treat women worse than men.  (Dunlop Dep. Tr. 63:13-17; B-562) and neither did Becker or Landis.  (Dunlop Dep. Tr. 63:19-22; B-562).

Accordingly, this claim must be dismissed.

## CONCLUSION

For all of the reasons set forth in Defendants' Moving Brief, accompanying Appendix and this Reply Brief, Defendants respectfully request that this Court 1) grant their Motion for Summary Judgment in its entirety; 2) dismiss with prejudice, all the Counts of Plaintiff's Complaint and 3) award them such other and further relief as is just and appropriate.

Respectfully submitted,

REED SMITH LLP

BY:     /s/ Thad J. Bracegirdle
        Thad J. Bracegirdle (No. 3691)
        1201 Market Street, Suite 1500
        Wilmington, DE 19801
        (302) 778-7500

        John Unkovic (admitted *pro hac vice*)
        435 Sixth Avenue
        Pittsburgh, PA 15219
        (412) 288-3131

        Stephanie Wilson (admitted *pro hac vice*)
        Sherri A. Affrunti (admitted *pro hac vice*)
        Princeton Forrestal Village
        136 Main Street, Suite 250
        Princeton, NJ 08540
        (609) 987-0050

        Attorneys for Defendants

Dated:  March 22, 2007