



$01.480

US POSTAGE



RECEIVED

JUL 11 2007

SUE L. ROBINSON
U.S. DISTRICT JUDGE

Paul Patrick Rooney
Reed Smith LLP
375 Park Avenue
17th Floor
New York, NY 10152



U.S.M.S.





NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD




JUDGE SUE L. ROBINSON
UNITED STATES DISTRICT COURT
U.S. COURTHOUSE
WILMINGTON, DELAWARE 19801

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300

Civ. No. 05-891-SLR

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LINDA J. BLOZIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 05-891-SLR |
| | ) |
| MELLON TRUST OF DELAWARE | ) |
| NATIONAL ASSOCIATION, MELLON | ) |
| BANK NATIONAL ASSOCIATION, | ) |
| and MELLON FINANCIAL | ) |
| CORPORATION, | ) |
| | ) |
| Defendants. | ) |

Thomas S. Neuberger, Esquire and Stephen J. Neuberger, Esquire of The Neuberger Firm, P.A., Wilmington, Delaware. John M. LaRosa, Esquire of the Law Office of John M. LaRosa, Wilmington, Delaware. Counsel for Plaintiff.

Thad J. Bracegirdle, Esquire of Reed Smith LLP, Wilmington, Delaware. Counsel for Defendants. Of Counsel: John Unkovic, Esquire of Reed Smith LLP, Pittsburgh, Pennsylvania; Stephanie Wilson, Esquire and Sherri A. Affrunti, Esquire of Reed Smith LLP, Princeton, New Jersey.

## MEMORANDUM OPINION

Dated: June 5, 2007
Wilmington, Delaware

**ROBINSON, Chief Judge**

## I. INTRODUCTION

Plaintiff Linda J. Blozis ("plaintiff") filed this action against Mellon Trust of Delaware National Association, Mellon Bank National Association, and Mellon Financial Corporation (collectively, "defendants" or "Mellon") on December 27, 2005. (D.I. 1) Plaintiff's complaint alleges sex discrimination, harassment, and retaliatory discharge actionable under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 et seq., and the Delaware Discrimination in Employment Act ("DDEA"), 19 Del. C. §§ 710 et seq..[1] She also alleges age discrimination, harassment, and retaliatory discharge in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., and the DDEA.[2]  Plaintiff requests compensatory damages, special damages, attorney fees,

---

[1]The DDEA states, in pertinent part, that

[i]t shall be an unlawful employment practice for an employer to:

(1) . . . discriminate against any individual with respect to compensation, terms, conditions or privileges of employment because of such individual's . . . age . . . [or] sex . . . ; or

(2) [l]imit, segregate or classify employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect the individual's status as an employee because of such individual's . . . age . . . [or] sex . . . .

19 Del. C. § 711(a).

[2]The anti-retaliation provision of the DDEA states that

[i]t shall be an unlawful employment practice for any employer . . . to discharge, refuse to hire or otherwise discriminate against any individual or applicant for employment or membership on the basis of such person's . . . age . . . [or] sex . . . because such person has opposed any practice prohibited by this subchapter[.]

19 Del. C. § 711(f).

and costs. (Id. at 17-18) Plaintiff also requests that the court issue an injunction requiring defendants to reinstate plaintiff or place her in a comparable employment position. (Id. at 17) Discovery in the case has concluded. Presently before the court is defendants' motion for summary judgment. (D.I. 42) The court has jurisdiction over the matter at bar pursuant to 28 U.S.C. § 1331.

## II. BACKGROUND

### A. The Parties

Plaintiff was born on December 10, 1945; she is currently 61 years old and was 58 at the time her employment with defendants was terminated. Plaintiff began her employment with defendants as a secretary in February 1990, and became a portfolio administrator in defendants' Private Asset Management Department in October 1999. (D.I. 44 at A38) She remained in this position throughout the duration of her employment, and worked exclusively in defendants' Delaware office. Plaintiff was the only female portfolio administrator in the Delaware office during the relevant period.

Portfolio administrators support senior portfolio officers who are responsible for managing personal trusts, estates, pensions, institutional accounts, and other client accounts. (Id. at A39) Specifically, portfolio administrators help to ensure that the accounts are in compliance with governing instrument principles and fiduciary principles and are meeting investment objectives. (Id.) Plaintiff worked on a team commonly called the "Gilmore team" because its leader was Brendan Gilmore ("Gilmore"). The Gilmore team comprised both portfolio officers and portfolio administrators who worked

2

in defendants' Delaware, Philadelphia, and Washington, D.C. offices. At some point during plaintiff's tenure, the portfolio administrator position evolved to require additional responsibilities, such as being in charge of client accounts and being knowledgeable about defendants' investment process.[3] (Id.; D.I. 47 at 31)

## B. Plaintiff's Evaluations

Prior to 1998, plaintiff received favorable reviews from her supervisors.[4] From 1998 through 2002, spanning the time when she became a portfolio administrator in 1999, plaintiff reported to portfolio manager Bill Becker ("Becker"). Becker executed a "Performance Management Form" in 2002 which reviewed plaintiff's 2001 performance (the "2001 performance review"). (D.I. 45 at A319-28) In this review, plaintiff received a rating of "outstanding," "exceptional," or "meets target" in each review category. With respect to her "[c]ompetencies," plaintiff was given a "meets target" rating in her "judgment" and "product knowledge/work quality," and an "outstanding" in personal accountability. (Id. at A324)

For 2002, plaintiff received less favorable ratings in several competency catagories. Becker executed a "Performance Management Form" on January 21, 2003 which reviewed plaintiff's 2002 performance (the "2002 performance review"). (D.I. 45

_____

[3]The evidence of record is unclear as to when, exactly, management increased its expectations of its portfolio administrators. (DI 44 at A38) However, it is apparent that this change occurred prior to plaintiff's favorable 2001 review. (D.I. 48 at B436-37, B836, B511)

[4]Rosemary Curtis Thomas ("Thomas"), Senior Human Resources Business Partner and vice president of the Mellon Corporation, testified that defendants' human resources records indicate that plaintiff's performance "exceeded expectations" between 1993 and 1997. (D.I. 48 at B591, B613) The records themselves do not appear to be before the court.

3

at A342-48) In the 2002 performance review, plaintiff received favorable ratings in

many categories, but a "N[eeds] I[mprovement]" rating in several competency areas,

including the following: judgment ("determining the importance of finishing a specific

project on time"), personal accountability ("[t]aking ownership of projects without

constant monitoring"), initiative and organization ("[m]issing deadlines"), and product

knowledge and work quality ("little progress made in this area during 2002"). (Id. at

A345) Plaintiff was given an overall year-end assessment of "Needs Improvement" in

the competency category.[5] (Id.) The assessment recommended that plaintiff "identify

all outstanding projects by February 15th, and each should have a deadline assigned,

with a zero tolerance policy for lack of timely completion." (Id. at A346) Plaintiff

submitted a written response to this review on February 11, 2003, wherein she

defended her performance. (Id. at A349-50) Plaintiff did not receive an incentive

bonus for her job performance in 2002.

On December 4, 2002, Becker sent an e-mail to Thomas requesting information

on severance packages. Becker stated:

> The reason I'm asking is because I've unfortunately had to begin a file for Linda
> Blozis. She has consistently been missing deadlines on projects over the past
> year. In addition to that, the quality of her work has been poor, from accuracy of
> placing trades to incomplete reg[.] 9 reviews, and the list goes on. I personally
> believe that she simply can't keep up with what I need her to do, nor does she
> have the capacity to take on the new responsibilities that her job now needs to
> include, like taking on accounts of her own and learning of her investment
> processes, etc.
>
> I like Linda personally. Her attitude has overall been OK, although recently she

---

[5]In contrast, the same review graded plaintiff as "Meet[ing] Target" for her
"Results-Based Goals" and gave her a "Highly Effective" rating for "Shared Values."
(D.I. 45 at A343-44)

4

has exhibited some similarities we had to endure from a former employee in Delaware. I know I'm stressing her out with the workload, but I've been doing too much of her job over the past four years and I simply refuse to do it anymore.

(D.I. 44 at A146) In 2003, Becker left the Delaware office and Gilmore became more active in managing the Delaware office. (D.I. 48 at B465, B759) At that time, Gregg Landis ("Landis") was plaintiff's boss, although she reported directly to Gilmore. (Id. at B593-94)

Plaintiff asserts that Gilmore told the members of his team in the Delaware office that the team "was not going to be like it was under [trust administrating officer Robert] Bell ["Bell"], [Vice President and administrative officer Linda] Squier ["Squier"], or [Vice President Martha] Fetters ["Fetters"]," who had previously left defendants' employment.[6] (D.I. 47 at 27; D.I. 48 at B98) According to plaintiff, each of Bell, Squier, and Fetters were over forty years old when they left their positions with defendants. (D.I. 47 at 26)

Landis testified that, in addition to teamwork, "Mellon believes it is the duty of an individual to complete most of his or her tasks with little help so that each of us focuses on the job that's assigned to us." (D.I. 48 at B755) According to Landis, plaintiff was once criticized, after the fact, for asking another portfolio administrator, Maria Dunlop ("Dunlop"), to assist her in binding a booklet. (Id. at B757) In contrast, Dunlop "certainly was encouraged to come to [plaintiff] and other members of our team for help when necessary." (Id. at B757) Dunlop confirmed that plaintiff was allowed to assist her with assignments. (Id. at B529) Plaintiff told management that her workload

---

[6]Plaintiff does not indicate when these statements were purportedly made.

5

exceeded the 37.5 hours for which she was paid each week, and that she was unwilling to work additional hours. (Id. at B725-27, B638)

## C. Events Occurring During Gilmore's Management of the Delaware Office

On March 13, 2003, plaintiff requested permission from Landis to take two weeks of accrued vacation time between May 5 and 16, 2003. (D.I. 45 at A449) Landis drafted a handwritten note advising plaintiff that, on March 18, 2003, Gilmore had "partially approved" her vacation request. (Id.) Due to short staffing resulting from Becker's promotion, and in view of plaintiff's two week vacation in December 2002, "[i]t was felt that she should take just [one] week at th[at] time to maintain office coverage." (Id.) Plaintiff agreed to take six vacation days between May 2 and 9, 2003. (Id.)

Prior to her vacation, on April 30, 2003, Gilmore met with plaintiff in his office for about fifteen to twenty minutes. (D.I. 48 at B150) Gilmore was upset because plaintiff had failed to complete certain client booklets. (D.I. 43 at 11) Plaintiff asserts that Gilmore used a very loud voice with her in a threatening and demeaning manner,[7] and used profanity. (D.I. 48 at B137-39) Plaintiff claims that Gilmore also criticized her work, stating that other portfolio administrators in Philadelphia had more responsibilities and were "producing a lot more and a lot faster"; the Philadelphia employees purportedly referenced by Gilmore were younger than plaintiff. Plaintiff further alleges that Gilmore called plaintiff a "survivor." (Id. at B152, B162) At the time the incident occurred, plaintiff was the last remaining member of Gilmore's original team. (D.I. 43 at

---

[7]Plaintiff asserts that Gilmore's voice was so loud that it upset Dunlop, who heard it though the closed door. (D.I. 48 at B137) Dunlop did not recall the incident at her deposition. (Id. at B530) Thomas, however, recalls Dunlop telling her that she heard elevated voices. (D.I. 45 at A337)

6

12; D.I. 47 at 7)

On May 1, 2003, the day after her meeting with Gilmore, plaintiff availed herself of defendants' Equal Employment Opportunity policy[8] by complaining to Thomas about Gilmore. (D.I. 43 at 13) Plaintiff believed that Gilmore's words and conduct towards her were motivated by age. (D.I. 48 at B161) She "suspected [Gilmore] was systematically trying to intimidate [her]" because she was the oldest and last remaining "survivor" of his original team.[9] (Id.) As part of her investigation, Thomas told Gilmore that plaintiff had made an age discrimination complaint. (Id. at B474, B657) Thomas also spoke about Gilmore with Dunlop, Becker, Landis, and a portfolio administrator in the Philadelphia office who is close to plaintiff's age. (Id. at B657) Thomas's investigation ultimately determined that Gilmore had not engaged in age discriminatory conduct.

On May 9, 2003, while plaintiff was on vacation, Landis reported several issues to Gilmore regarding plaintiff's job performance. Specifically, Landis complained that plaintiff had failed to complete an investment recommendation after being given the information necessary to do so, which "made Mellon look very unsophisticated to an

---

[8]This policy is contained in defendants' "Corporate Policies and Procedures Manual," revised December 11, 2001. (D.I. 44 at A70-95) The policy states that defendants provide equal employment opportunities to their employees regardless of age and sex; any employee who believes a policy violation has occurred should report it to management, thereby triggering the policy's investigation and response provisions, which are referred to as the "corrective action process." (Id. at A71, A73, A84)

[9]The court notes for the record that the term "survivor" is not, on its face, indicative of age related bias, such as would be the case with words like "old" or "young." See Keller, 130 F.3d at 1112; Futrell v. J.I. Case, 38 F.3d 342, 347 (7th Cir. 1994). However, the circumstances viewed as a whole, including Gilmore's use of the term "survivor," may give rise to an inference of discriminatory animus.

7

important client[.]" (D.I. 45 at A306) Additionally, Landis stated that plaintiff had

inexcusably failed to complete any work on a draft recommendation given to her on

April 7, 2003. (Id.) Landis indicated that he "unders[tood Thomas would] be placing

Linda [Blozis] on final written warning next week, and [would] be asking Rosemary

[Thomas] to help in the communication of this decision." (Id.) Gilmore's supervisor,

Paul Kochis, responded that plaintiff's behavior was "gross negligence or

insubordination in [his] view. . . . Absent adequate explanation, [he] recommend[ed] that

she be terminated next week upon her return." (Id.)

　　　　Thomas drafted a "Final Written Warning for Performance" (the "final warning")

on May 14, 2003. (D.I. 48 at B483, B665) Gilmore approved its content and is listed as

the author. (Id. at B484-86) Plaintiff received and signed the final warning on May 19,

2003.[10] (D.I. 45 at A351) The final warning stated that plaintiff's "lack of detail and

timeliness continue[d] to need improvement[,]" and listed the following areas of

concern:

> [1]　　Failure to determine the importance of finishing projects in a timely
> manner.
>
> [2]　　Lack of ownership of projects without constant monitoring.
>
> [3]　　Product Knowledge and Work Quality. Developing a better understanding
> of investments in general and Mellon's investment policies and
> procedures, specifically, to ensure that accounts are handled
> appropriately.

(Id.) The final warning mandated that plaintiff "demonstrate immediate and sustained

improvement in [her] overall performance" with "special focus" on the above issues, and

---

[10]Although written on May 14, the final warning is dated May 19, 2003, the day
on which it was actually issued to plaintiff. (D.I. 45 at A351)

8

warned that if her performance continued not to meet expectations, she might be subject to further corrective action up to and including termination of her employment. (Id.)

On May 20, 2003, plaintiff was given an assignment to review a stale price assets report and provide data to the Asset Master Pricing Group. (Id. at A315) The assignment was due on June 20, 2003. (Id.) On June 26, 2003, Landis emailed plaintiff to question why the task had not been completed; plaintiff replied that she "[had] not been able to fit it into the many other tasks that [she had] accomplished in the past month." (Id. at A314-15) Landis forwarded the emails to Thomas, noting that plaintiff had started to receive training on investment proposals, and that he "[had] started to notice a bit more focus/energy with [her]. But here is a prime example of not getting things done in a timely fashion and the usual excuses." (Id. at 314)

On July 2, 2003, Thomas sent an e-mail to Gilmore and Landis titled "L. Blozis." (D.I. 48 at B934) Thomas stated: "I have approval to move on this issue. I am out of the office tomorrow and Monday and Tuesday of next week. I would like for you to wait until Wednesday when I return." (Id.) On July 10, 2003, Landis emailed Gilmore to document plaintiff's continued "lack of sufficient product knowledge and work quality[.]" (D.I. 45 at 317) This e-mail referenced generally Landis's belief that plaintiff had not timely prepared for a recent team meeting; as a result, plaintiff had resorted to sending materials by "a delivery method that was more expensive than necessary." (Id.) In addition, Landis stated that plaintiff had received recent training, but "these efforts did not produce the kinds of results we need." (Id.)

Thomas terminated plaintiff's employment on or about July 14, 2003. (D.I. 48 at

9

B341-43) Laura Shannon ("Shannon"), then in her thirties, subsequently was hired as a portfolio administrator in the Delaware office. (D.I. 48 at B484, B489-90)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it

10

has the burden of proof, the moving party is entitled to judgment as a matter of law.
See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). With respect to summary
judgment in discrimination cases, the court's role is "to determine whether, upon
reviewing all the facts and inferences to be drawn therefrom in the light most favorable
to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact
as to whether the employer intentionally discriminated against the plaintiff." Revis v.
Slocomb Indus., 814 F. Supp. 1209, 1215 (D. Del. 1993) (quoting Hankins v. Temple
Univ., 829 F.2d 437, 440 (3d Cir. 1987)).

## IV. DISCUSSION

### A. Age Discrimination

The ADEA prohibits an employer from "discriminat[ing] against any individual
with respect to his compensation, terms, conditions, or privileges of employment,
because of such individual's age[.]" 29 U.S.C. § 623(a)(1). Because plaintiff has not
provided direct evidence of age discrimination, this court analyzes her claim under the
familiar burden shifting approach of McDonnell Douglas Corp. v. Green, 411 U.S. 792
(1973). See Fakete v. Aetna, Inc., 308 F.3d 335, 337-39 (3d Cir. 2002);[11] accord
Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2007). The burden shifting analysis under
the ADEA requires that plaintiff first establish a prima facie case of age discrimination.

---

[11]In Fakete, the United States Court of Appeals for the Third Circuit noted that,
"[w]hile our Court has held that the McDonnell Douglas framework applies in ADEA
cases, see, e.g., [Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir.
1997)], the Supreme Court has not decided this question, though it has assumed
arguendo that our approach is correct." Fakete 308 F.3d at 338 n.3 (citing Reeves v.
Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000); O'Connor v. Consol. Coin
Caterers Corp., 517 U.S. 308, 311 (1996)).

11

See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).

> In order to establish a prima facie case of discrimination, the plaintiff must
> demonstrate that (1) s/he is over forty, (2) is qualified for the position in
> question, (3) suffered from an adverse employment decision, and (4) his
> or her replacement was sufficiently younger to permit a reasonable
> inference of age discrimination.

Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004) (citing Duffy v.

Paper Magic Group, Inc., 265 F.3d 163, 167 (3d Cir. 2001)).  Once plaintiff has

established a prima facie case, the burden shifts to defendants to produce evidence of

a legitimate nondiscriminatory reason for the adverse decision.  See McDonnell

Douglas, 411 U.S. at 802.  If defendants carry this burden, the presumption of

discrimination drops from the case, and plaintiff must "cast sufficient doubt" upon

defendants' proffered reasons to permit a reasonable fact finder to conclude that the

reasons are fabricated.  See Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d

1061, 1072 (3d Cir. 1996) (en banc).

## 1. The first two McDonnell Douglas factors

Plaintiff was over forty years old when her employment was terminated; such

termination is clearly an adverse employment action.[12]  See Abramson v. William

Paterson Coll., 260 F.3d 265, 288 (3d Cir. 2001).  Plaintiff, then 58, was replaced by a

---

[12]The court holds that defendants' requirement for plaintiff to train Dunlop and
the denial of plaintiff's full vacation request do not constitute adverse employment
actions. (D.I. 45 at 35) Additionally, neither plaintiff's 2002 performance review nor
defendants' decision not to award plaintiff a bonus for 2002 are, in and of themselves,
adverse employment actions which may give rise to an ADEA or Title VII claim.  See
Tucker v. Merck & Co., Inc., 131 Fed. App'x 852, 857 (3d Cir. 2005) (non-precedential)
(citing Rabinovitz v. Pena, 89 F.3d 482, 488-89 (7th Cir. 1996) (additional citation
omitted)); Rabinovitz, 89 F.3d at 488-89 ("[T]he loss of a bonus is not an adverse
employment action in a case such as this where the employee is not automatically
entitled to a bonus.").

sufficiently younger individual, Shannon, who was in her thirties. Although defendants assert that plaintiff was not qualified for the portfolio administrator position "because she was on corrective action for persistent performance problems which ultimately led to the termination of her employment" (D.I. 43 at 23), a reasonable jury could conclude that plaintiff was qualified for the position of portfolio administrator. Plaintiff worked for defendants for approximately nine years prior to securing her portfolio administrator position in 1999, and received favorable reviews of her work performance prior to 2002. (D.I. 45 at A319-28) There is evidence of record indicating that the 2001 review followed the change in job responsibilities for the portfolio administrator position. Therefore, for purposes of this proceeding, the court finds that plaintiff has stated a prima facie case of age discrimination. See Potence, 357 F.3d at 370.

Defendants have iterated a legitimate, non-discriminatory reason for the termination of plaintiff's employment: poor performance. (D.I. 43 at 24) The question at bar is whether, viewing the facts and inferences therefrom in a light most favorable to plaintiff, a reasonable jury could find that this stated reason was a pretext for age discrimination. "[A] plaintiff who has made out a prima facie case may defeat a motion for summary judgment by either (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes v. Perski, 32 F.3d 759, 764 (3d Cir. 1994).

### 2. **Fuentes**

#### a. **Plaintiff has not sufficiently discredited defendants' proffered reason of poor performance**

13

Plaintiff argues that the criticisms she received in her final warning were "weak and implausible" because her work performance was related to the short-staffing of the Delaware office; she should not have had certain responsibilities in the first place; and she was not given on-the-job training to increase her product knowledge. (D.I. 47 at 32-33) These arguments, however, amount to justifications, and do not directly contradict defendants' criticisms. See Fuentes, 32 F.3d at 765 ("To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."). For this reason, the court declines to find that plaintiff has sufficiently discredited defendants' articulated reason of poor performance.

### b. Plaintiff has adduced evidence that discrimination was the motivating factor behind her termination

To avoid summary judgment, therefore, plaintiff must point to evidence of pretext. Plaintiff is not required to affirmatively demonstrate this element of her case; however, her "evidence rebutting [defendants'] proffered legitimate reasons must allow a factfinder reasonably to infer that each of the [defendants'] proffered non-discriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." Fuentes, 32 F.3d at 764 (internal citation omitted).

Even viewing the facts and inferences therefrom in a light most favorable to plaintiff, it is apparent that plaintiff was experiencing performance problems and was unwilling to work overtime to correct them. On the other hand, the record demonstrates

14

that defendants' management of plaintiff was not a model of clarity. For instance, it is
not clear when, or in what fashion, the job responsibilities of a portfolio administrator
changed and whether personnel in the Delaware office were required to take on more
responsibilities than their counterparts in the Philadelphia office; consequently, there
are genuine issues of material fact as to whether the expectations for, and evaluations
of, plaintiff were appropriate and fair. These issues of fact, when viewed in the context
of plaintiff's April 30, 2003 meeting with Gilmore[13] and his seeming emphasis on the
performance of younger portfolio administrators in the Philadelphia office, may be seen
by a jury as indicative of age bias. In the case at bar, it also is not clear to the court
whether defendants complied with their Equal Employment Opportunity ("EEO") policy,
called the "Handbook,"[14] or whether the broad discretion given to managers by the
Handbook for deciding when accelerated action is appropriate simply created a
potential for abuse of that discretion. (D.I. 44 at A44, A53) For these reasons,
defendants' motion for summary judgment on plaintiff's age discrimination claims is
denied.[15]

---

[13]The court notes for the record that Gilmore was a member of the protected
class during the critical time frame (D.I. 48 at B425) and, therefore, plaintiff's ability to
demonstrate an inference of age discrimination by Gilmore is limited. See Dungee v.
Northeast Foods, Inc., 940 F. Supp. 682, 688 n.3 (D.N.J. 1996).

[14]Specifically, it is unclear whether plaintiff was given an "initial written warning"
contemplated by the Handbook. (D.I. 44, ex. C, tab 1 at A44, A52-53 and tab 3 at A88-
89)

[15]The court holds, however, that plaintiff is precluded from arguing at trial that the
following evidence supports her age discrimination claims: (1) the failure to get a bonus
in 2002, as plaintiff provided no examples of similarly situated individuals who received
both an unfavorable review and a bonus for the same year; (2) shortened vacation time
in May 2003, as plaintiff failed to rebut defendants' explanation for such; (3) systematic

15

## B. Retaliatory Discharge

In order to establish a prima facie case of discriminatory retaliation, plaintiff must show that: (1) she engaged in protected activity; (2) defendants took adverse action against her; and (3) a causal link exists between the protected activity and defendants' adverse action. See Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173, 177 (3d Cir. 1997) (Title VII standard).[16] A causal link may be demonstrated by a close temporal proximity between the employee's protected activity and the adverse employment action. See Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989). Where there is a lack of temporal proximity, circumstantial evidence of a "pattern of antagonism" following the protected conduct can also give rise to the inference that protected activity was the likely reason for the adverse action. See Kachmar, 109 F.3d at 177 (citing Robinson v. Se. Pa. Transp. Auth., 982 F.2d 892, 895 (3d Cir. 1993)). Additionally, the evidence as a whole may suffice to raise the inference of a causal link. See Id. (citing Waddell v. Small Tube Products, Inc., 799 F.2d 69, 73 (3d Cir. 1986)).

In the case at bar, plaintiff engaged in protected activity when she complained to Thomas on May 1, 2003 about Gilmore's conduct during the April 30, 2003 meeting. Plaintiff was issued the final warning on May 19, 2003, and her employment was

_____

elimination by Gilmore of older workers, as plaintiff provided no evidence that age was a factor in the termination of any of these workers. Further, plaintiff, having elected to prosecute her age discrimination and retaliation claims under the ADEA, is barred from seeking remedies provided by the DDEA pursuant to her election of this federal forum. 19 Del. C. § 714(c); Wilcoxon v. Red Clay Consol. Sch. Dist., 437 F. Supp. 2d 235, 246-47 (D. Del. 2006).

[16]The ADEA's provision against retaliatory discharge is identical to that of Title VII. See Slagle v. County of Clarion, 435 F.3d 262, 266 (3d Cir. 2006).

16

terminated on or about July 14, 2003.  (D.I. 45 at A351, A317)  The court finds a close

temporal proximity between her protected complaint and the adverse employment

action.[17]  Moreover, viewing the facts in a light most favorable to plaintiff, the record

raises genuine issues of material fact as to whether there is a causal connection

between plaintiff's complaint and the termination of her employment.  For instance,

although defendants argue that plaintiff continued to have performance problems after

May 19, a reasonable jury could conclude that the eight-week period between the final

warning and the July 14 termination date was too insubstantial a period of time for

plaintiff to "demonstrate immediate and sustained improvement in [her] overall

performance" by, e.g., increasing her "product knowledge" (presumably through training

of some kind) while at the same time being required to meet what the court has found

to be obtuse expectations based on inconsistent evaluations accorded plaintiff as a

portfolio administrator.  The court recognizes that it is not within its purview to second-

guess defendants' decision.  See Keller, 130 F.3d at 1109 ("The question is not

whether the employer made the best or even a sound business decision; it is whether

the real reason is discrimination."); Logue v. Int'l Rehab. Assocs., Inc., 837 F.2d 150,

155 n.5 (3d Cir. 1988) ("[O]ur task is not to assess the overall fairness of . . . [the]

employer's actions.").  The court declines, however, to find that a reasonable jury could

not view the evidence of record as indicating that plaintiff was terminated in retaliation

---

[17]The court notes in this regard that defendants' characterization of the holding in
Bailey v. Commerce National Insurance Services, Inc., 474 F. Supp. 2d 577 (D.Del.
2007) is over-broad; the court in Bailey did not endorse a presumption that an eight-
week proximity between a protected activity and an adverse employment decision could
not be suggestive of retaliatory motive.

17

for her complaint. Defendants' motion for summary judgment on plaintiff's retaliatory discharge claims is denied.

## C. Sex Discrimination

Plaintiff asserts that defendants discriminated against her "by their preferential treatment of the one, lone male portfolio administrator who was not required to perform as much work as [p]laintiff or her female peers, nor was he disciplined or discharged for lack of performance." (D.I. 47 at 36) Plaintiff admits that during her entire tenure with defendants, she was the only female portfolio administrator in the Delaware office. (Id. at 37) She bases her claim on the fact that, while in the Philadelphia office, "she noticed that fellow [p]ortfolio [a]dministrator Dan Merlino [("Merlino")] was not as busy as she and the other female[s]" of the same title. (Id.) Additionally, plaintiff states that Gilmore should have brought portfolio administrators such as Merlino from the Philadelphia office to assist her in Delaware, but Gilmore "did not even consider giving her help because [she] was an older woman." (Id.) There is no evidence of record, however, indicating that either Gilmore or Becker were aware of Merlino's allegedly poor performance. (D.I. 46 at A235)

In truth, the only basis in the record for plaintiff's sex discrimination claim is her own, uncorroborated testimony. (Id. at 36-37, citing D.I. 46 at A231-36) Aside from Merlino, plaintiff presents no arguments or evidence regarding any other similarly situated employees. Plaintiff's perception regarding Merlino's workload, without more, is insufficient to withstand summary judgment. See Fletcher, 207 Fed. App'x at 138; Simpson, 142 F.3d at 646-47. Moreover, plaintiff has tacitly conceded that Gilmore never made any sexually charged comments to her. (D.I. 46 at A253) At her

18

deposition, she vaguely recounted that Gilmore made a comment regarding a woman's outfit, used a "gushing or flirting" tone with a female employee, and engaged younger employees in conversation more frequently. (D.I. 48 at B308, B307, B312) Even when viewed in the totality of the circumstances of this case discussed supra (including Gilmore's behavior towards plaintiff during the April 30, 2003 meeting), the court finds that this evidence is insufficient to establish the existence of intentional discrimination based on plaintiff's sex. The court, therefore, grants defendants' for summary judgment with respect to plaintiff's sex discrimination claim.

## D. Hostile Work Environment

Plaintiff asserts that the totality of the circumstances demonstrates that she was subjected to a hostile and/or abusive work environment due to her sex and/or age.[18] (D.I. 1 at 13-14) To establish her claims for employment discrimination due to a hostile work environment, plaintiff must demonstrate: (1) that she suffered intentional discrimination because of her age or sex; (2) the discrimination was severe or pervasive;[19] (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person of the same age or sex in that position; and (5) the existence of respondent superior liability. Andrews v. City of

---

[18]Although plaintiff characterizes her claims as ones for "harassment," the court interprets such as allegations of being subjected to a hostile work environment.

[19]While the Andrews court stated that the discrimination in question must have been "pervasive and regular," the United States Supreme Court has employed a "severe or pervasive" standard, see Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001), which the Third Circuit recently adopted, noting that "[t]he difference is meaningful, and the Supreme Court's word controls," Jensen v. Potter, 435 F.3d 444, 449 n.3 (3d Cir. 2006), overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405 (2006).

19

Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990) (citations omitted). A prima facie showing, therefore, contains both a subjective standard (that plaintiff was in fact affected) and an objective standard (that a reasonable, similarly situated person would have been affected). See id. at 1483. The record as a whole must be reviewed. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993) ("Whether an environment is 'hostile' . . . can be determined only by looking at all the circumstances."); Andrews, 895 F.2d at 1484 ("[A] discrimination analysis must concentrate not on individual incidents, but on the overall scenario.").

The court has concluded that no genuine issues of material fact exist as to whether plaintiff suffered intentional discrimination based on her sex. Therefore, plaintiff can not meet her burden to move forward on her hostile work environment claim on that basis.

With respect to plaintiff's hostile work environment claim on the basis of age discrimination, the Third Circuit has not formally recognized such a cause of action under the ADEA. See Lyles v. Phila. Gas Works, 151 Fed. Appx. 169, 172 (3d Cir. 2005) (non-precedential). The court declines to do so in this case.

Defendants' motion for summary judgment is granted as to these claims.

## V. CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted in part and denied in part. An appropriate order shall issue.

## Other Orders/Judgments
1:05-cv-00891-SLR Blozis v. Mellon Trust of Delaware et al
MEDIATION, PaperDocuments

### U.S. District Court

### District of Delaware

## Notice of Electronic Filing

The following transaction was entered on 6/5/2007 at 1:42 PM EDT and filed on 6/5/2007
**Case Name:**      Blozis v. Mellon Trust of Delaware et al
**Case Number:**    1:05-cv-891
**Filer:**
**Document Number:** 87

**Docket Text:**
MEMORANDUM OPINION. Signed by Judge Sue L. Robinson on 6/5/07. (rld)

### 1:05-cv-891 Notice has been electronically mailed to:
Thomas S. Neuberger tsn@neubergerlaw.com, Research@NeubergerLaw.com,
SJN@NeubergerLaw.com
Thad J. Bracegirdle Tbracegirdle@reedsmith.com
John M. LaRosa JLR@LaRosaLaw.com
Stephen J. Neuberger SJN@NeubergerLaw.com, Research@NeubergerLaw.com,
TSN@NeubergerLaw.com
John C. Unkovic junkovic@reedsmith.com
Stephanie Wilson swilson@reedsmith.com

### 1:05-cv-891 Notice has been delivered by other means to:

Paul Patrick Rooney
Reed Smith LLP
375 Park Avenue
17th Floor
New York, NY 10152

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=6/5/2007] [FileNumber=397568-0]

[67fa33d33fe2a1c736bb28ffd3be4026f659ea7b5a22f53c414ab26f22e7e3ae9568b
5e9895478596976c13f5500803d0ab35be66c6b11162451ea10b71ea1ce]]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LINDA J. BLOZIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 05-891-SLR |
| | ) |
| MELLON TRUST OF DELAWARE | ) |
| NATIONAL ASSOCIATION, MELLON | ) |
| BANK NATIONAL ASSOCIATION, | ) |
| and MELLON FINANCIAL | ) |
| CORPORATION, | ) |
| | ) |
| Defendants. | ) |

## O R D E R

At Wilmington this 5th day of June, 2007, consistent with the memorandum

opinion issued this same date;

IT IS ORDERED that defendants' motion for summary judgment (D.I. 42) is

granted in part and denied in part.

United States District Judge

## Orders on Motions

1:05-cv-00891-SLR Blozis v. Mellon Trust of Delaware et al
MEDIATION, PaperDocuments

### U.S. District Court

### District of Delaware

## Notice of Electronic Filing

The following transaction was entered on 6/5/2007 at 1:43 PM EDT and filed on 6/5/2007
**Case Name:**      Blozis v. Mellon Trust of Delaware et al
**Case Number:**    1:05-cv-891
**Filer:**
**Document Number: 88**

### Docket Text:
ORDER granting in part and denying in part [42] Motion for Summary Judgment. Signed by Judge Sue
L. Robinson on 6/5/07. (rld)

### 1:05-cv-891 Notice has been electronically mailed to:
Thomas S. Neuberger tsn@neubergerlaw.com, Research@NeubergerLaw.com,
SJN@NeubergerLaw.com
Thad J. Bracegirdle Tbracegirdle@reedsmith.com
John M. LaRosa JLR@LaRosaLaw.com
Stephen J. Neuberger SJN@NeubergerLaw.com, Research@NeubergerLaw.com,
TSN@NeubergerLaw.com
John C. Unkovic junkovic@reedsmith.com
Stephanie Wilson swilson@reedsmith.com

### 1:05-cv-891 Notice has been delivered by other means to:

Paul Patrick Rooney
Reed Smith LLP
375 Park Avenue
17th Floor
New York, NY 10152

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=6/5/2007] [FileNumber=397571-0]
[27a122c7581df0a5de05c5698ba7d7588de3f75434ab1c5fdd1e20f176fd0dcb38619
f2a785a82ffda216155cbb63beb056f889138dd085e4d2a3054c096b422]]